PEOPLE *v.* BOWMAN

1. CRIMINAL LAW—MISTRIAL—DEFENDANT'S CONSENT.

     A defendant in a criminal case who consents to the declaration of a mistrial may not later complain that the grounds for declaring the mistrial were false or inadequate.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5, 6] 21 Am Jur 2d, Criminal Law §§ 180, 195.
[3] 58 Am Jur 2d, New Trial § 228.
[4] 21 Am Jur 2d, Criminal Law § 300.

2. CRIMINAL LAW—MISTRIAL—DOUBLE JEOPARDY—WAIVER.

Denial of defendant's motion for a mistrial, made in chambers at a conference he had requested, did not operate as a discharge of his waiver of a claim of double jeopardy where a few minutes later the trial court, after further in-chambers conference with the prosecutor and defense counsel, granted the mistrial without any objection by counsel or any indication that defendant wished to withdraw his motion for mistrial.

3. CRIMINAL LAW—MISTRIAL—LAW OF THE CASE.

A declaration of a mistrial leaves the parties in the same status as if no trial had ever begun; court rulings at the first trial may not in any way affect the rulings in a second trial.

4. CRIMINAL LAW—TRIAL—DEFENDANT'S PRESENCE.

A defendant's right to be present at his trial extends to all conferences or occurrences at the trial wherein or whereby his substantial rights may be affected, but this right may be waived by the defendant.

5. CRIMINAL LAW—TRIAL—CONFERENCES—DEFENDANT'S PRESENCE—WAIVER.

Defendant, by remaining seated in the courtroom while counsel conferred with the trial judge, and on one occasion also with a juror, in off-the-record conferences which occurred at the bench only a few feet away from defendant voluntarily waived his right to be present during these conferences.

6. CRIMINAL LAW—TRIAL—CONFERENCES—DEFENDANT'S PRESENCE—WAIVER.

A conference between court, counsel, and a juror, which clearly concerned a matter of defendant's substantive right to an impartial jury trial, and which was held in defendant's absence, did not violate defendant's right to be present where his attorney was present and had an opportunity to object but did not; therefore, defendant's absence at this conference must be attributed to the exercise of his own will.

Appeal from Wexford, William R. Peterson, J. Submitted Division 3 October 6, 1971, at Marquette. (Docket No. 8088.)    Decided October 26, 1971. Leave to appeal denied, 386 Mich 783.

Daryl Bowman was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Stewart H. Freeman,* Assistant Solicitor General, and *Leo Maki,* Assistant Attorney General, for the people.

*Patrick J. Wilson,* for defendant.

Before: Fitzgerald, P. J., and Bronson and T. M. Burns, JJ.

Fitzgerald, P. J. Defendant was tried before a jury from July 28 to July 30, 1969, in the Circuit Court for the County of Wexford on a charge of first-degree murder.[1] The victim was Ronald Cronk, 19, a Ferris State College student, who had left Big Rapids to hitchhike home for the Thanksgiving recess. Death was caused by multiple wounds to the head, neck and chest.

Defendant was found guilty as charged and sentenced to life imprisonment on August 15, 1970. He appeals as of right, raising significant issues.

## I

The trial which led to defendant's conviction was his second trial on this charge, an earlier attempted trial on April 17 and 18, 1969, ending in a mistrial. Defendant claims that upon the termination of the first trial he should have been discharged since any subsequent trial would constitute double jeopardy, prohibited by the Fifth Amendment of the United States Constitution and by our own Constitution of 1963, Art 1, § 15.

Primarily, defendant bases his claim on the premise that once his motion for a mistrial was denied, it could no longer be interpreted as his consent to a

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

mistrial, and as no manifest necessity for a mistrial existed when it was ultimately declared, former jeopardy had attached to the defendant, was not waived, and precluded any second trial. Defendant did raise this objection below prior to the second trial and the trial court ruled against this claim. The question now comes to this Court.

Records available to us on appeal reveal that the prosecutor was prepared to present the people's case at the first trial, although he apparently was both inexperienced and suffering the effects of a bad cold. Whatever the reason, his opening statement was less than auspicious, emphasized by the fact that the trial judge twice encouraged the prosecutor to amend his statements. The attempted additional statements produced no improvement in the situation. Defendant objected that the prosecutor failed to establish in his statements all of the requisite elements to prove the crime charged, and later also objected to the court's interference with the conduct of the prosecutor's argument. After this bad start, the first day's proceedings continued with testimony from the prosecution's first witness.

On the following day, the court and counsel met in chambers where the defense renewed its earlier objections and moved for a mistrial. The motion was denied. A few minutes later, while still in chambers, the following occurred:

*(At this point a discussion was held off the record at the request of the prosecutor.)*

"*The Court:* Well, if you want to concur, on that basis I'll grant the mistrial."

*(After some further discussion court and counsel returned to the courtroom.)*

The court then discharged the jury as follows:

"Ladies and gentlemen of the jury, the court has been hearing a motion for the past half hour.

"Counsel for the defense has made a motion for a mistrial and the prosecuting attorney has concurred that some of the procedure questions may have been such as to perhaps have prejudiced the prosecution of the case, and he concurred in the defendant's request for a mistrial; and I'm accordingly declaring a mistrial, discharging you, and the matter will be rescheduled for trial at another date."

We note that these occurrences were not objected to by the defendant and he did not at any time indicate a desire to withdraw his motion for a mistrial.

There is nothing in the record of this first trial to indicate a *manifest* necessity for a mistrial which would then justify such action by the court, even in absence of the defendant's consent. *People* v. *Anglin* (1967), 6 Mich App 666. The objections raised by defendant and upon which his motion for a mistrial was based were substantially without merit. However, where a mistrial is declared with the defendant's consent, he may not later complain that the grounds for declaring the mistrial were false or inadequate. *People* v. *Fochtman* (1924), 226 Mich 53; *People* v. *Henley* (1970), 26 Mich App 15; *Gori* v. *United States* (1961), 367 US 364 (81 S Ct 1523, 6 L Ed 2d 901).

Consequently, we are faced with the question as to whether or not the defendant manifested his consent to the mistrial. Of course such consent which would in fact waive a fundamental constitutional right must be clear and unequivocal. *People* v. *Iaconis* (1971), 29 Mich App 443; *People* v. *Carlton Brown* (1970), 23 Mich App 528. The fact that the defendant was the party who initially moved for a mistrial certainly seems to indicate a clear and unequivocal consent to waiving his claim of double

jeopardy. But since his original motion was denied, the defendant now claims that the denial operates as a discharge of this waiver; and when the motion was finally granted, this was at the request of the prosecutor so that the defendant's consent can no longer be implied.

Michigan courts apparently have not had an opportunity to decide what effect a denial has upon a motion for a mistrial and whether such denial forecloses defendant's consent to a mistrial when ultimately granted. *Fochtman, supra,* does, however, quote approvingly from a Georgia case wherein an analogous situation was presented. In *Brown* v. *State* (1900), 109 Ga 570 (34 SE 1031), defendant's demurrer to the affidavit and accusation was initially denied and the defendant ordered to trial. After the state had introduced one witness, the court reconsidered the demurrer, reversed its former ruling and quashed the accusation, all without defendant's objection. Defendant's double jeopardy claim, raised at a second trial for the same offense, failed. His conviction at the second trial was affirmed on the holding that since the defendant made the initial motion and remained silent when it was finally granted, he could not "question the propriety of a ruling which he himself invoked". See, also, *Selman* v. *State* (Alaska, 1965), 406 P2d 181; *Blocher* v. *State* (1912), 177 Ind 356 (98 NE 118); *Cambron* v. *State* (1922), 191 Ind 431 (133 NE 498); *Matter of Kamen* v. *Gray* (1950), 169 Kan 664 (220 P2d 160); *State* v. *Wolak* (1960), 33 NJ 399 (165 A2d 174); *People* v. *Montlake* (1918), 184 App Div 578 (172 NYS 102).

We are not unmindful that there are cases reaching contrary results upon similar fact situations. *Cody* v. *State* (1963), 237 Ark 15 (371 SW2d 143);

*Cardenas* v. *Superior Court of Los Angeles County* (1961), 56 Cal 2d 273 (363 P2d 889, 14 Cal Rptr 657); *State, ex rel. Manning,* v. *Himes* (1943), 153 Fla 711 (15 So 2d 613); *State* v. *Grayson* (Fla, 1956), 90 So 2d 710; *State* v. *Stiff* (1924), 117 Kan 243, *reh* 118 Kan 208 (234 P 700); *Sussman* v. *District Court of Oklahoma County* (Okl Cr, 1969), 455 P2d 724; *People* v. *McGrath* (1911), 202 NY 445 (96 NE 92); *Matter of Gershon* v. *Sardonia* (1966), 50 Misc 2d 423 (270 NYS2d 729). Some of these cases, however, are distinguishable by the added consideration that the defendant objected to the mistrial or attempted to withdraw his motion. In others, the motion was granted only to benefit the prosecutor, or as a result of the prosecutor's misconduct.

We do not doubt that in this case the prosecutor, with his poor health and his less than laudatory beginning, was happy to concur with the defendant's motion, but we cannot infer from this that the motion became his or was only for his benefit. If the defendant wished to proceed, he could have objected or he could have withdrawn his motion.

The prosecutor was quite prepared, our record shows, to continue, had the defense so desired. From what the trial judge told the jury, we may conclude that in his mind it was the defense motion that was being considered, that it was because of the defense motion that a mistrial was granted. The in-chambers conference was precipitated by the defendant in order to consider his motion for a mistrial. When it was over, the mistrial was granted. All these factors indicate to this Court that the first trial was ended with the defendant's consent.

At this point, we are constrained to report, an assistant attorney general was assigned by the state to conduct the second trial. The necessity for this ac-

tion may shed some light on the sagacity of the proposal for full-time prosecutors on a judicial circuit basis in the state's less densely populated areas.

We acknowledge the merit in the defendant's fear that by holding that a denial has no effect, any motion made by a defendant might be granted to his detriment at some later stage of the proceedings when his fortunes have changed. This, if allowed, would certainly dampen the efforts of the defendant's counsel to protect his client, making him fearful that any motion for a mistrial, though denied, may return to haunt him when the court decides to reverse its decision (perhaps because a prosecutor's case has not gone as well as it might have), and force the defendant into a second trial on a theory that the court was only finally doing what the defendant asked him to do.

We do not have that situation here. The position of the parties had not substantially changed between the denial of the motion and its allowance just a few moments later. Reality dictates that trial judges often must make rapid decisions and should be allowed an opportunity to change their minds, so long as the parties are not prejudiced thereby. Here, the trial judge did change his mind, and granted, without hearing a protest, defendant's motion. Defendant cannot now raise the issue of double jeopardy.

## II.

Defendant suggests that since the prosecutor was limited by the court to the theory of felony murder at the first trial, that he was likewise limited to this theory at the second trial. When a mistrial has been declared, it is as though there has been no trial, the parties are left in the same status as if no trial had

ever begun. *People* v. *Dimitru* (1923), 224 Mich 670; *People* v. *Grimmett* (1970), 27 Mich App 509. Consequently, whatever rulings were made by the court at the first trial may not in any way affect the rulings in the second.

### III.

Defendant also alleges that conferences between counsel and court and on one occasion between counsel, court and a member of the jury, during the second trial and out of the presence of the defendant, violated his right to be personally present during the trial,[2] his rights to an impartial jury, and his right to confront the witnesses against him. US Const, Am 6, Const 1963, art 1, § 20.

Generally, defendant's right to be present at his trial extends to all conferences or occurrences at the trial wherein or whereby his substantial rights may be affected. *Hopt* v. *Utah* (1884), 110 US 574 (4 S Ct 202, 28 L Ed 262). Nothing in the nature of evidence should be taken in the absence of the accused. *People* v. *Medcoff* (1955), 344 Mich 108. However, this is a right which may be waived, *People* v. *Gant* (1961), 363 Mich 407, and in some circumstances the error of proceeding without the defendant's presence may be harmless error. *United States* v. *Schor* (CA2, 1969), 418 F2d 26; *People* v. *Kregger* (1953), 335 Mich 457. Often courts distinguish defendant's right to be present when substantive matters are discussed from defendant's discretionary presence when matters of procedure of law are discussed. See 21 Am Jur 2d 318, Criminal Law, § 289; 23 CJS 897, Criminal Law, § 974.

Unfortunately, four of the conferences complained of were off the record so we cannot tell what was

---

[2] MCLA § 768.3 (Stat Ann 1954 Rev § 28.1026).

discussed. If anything "in the nature of evidence" was presented, we cannot see how defendant may have been harmed by these conferences, as, presumably, if the matters were out of the reporter's hearing, they were also out of the hearing of the jury. More than likely, making a logical inference from the context in which these conferences were held, matters of procedure or law were discussed. In any event, since these conferences occurred at the bench just a few feet away from the defendant, we may assume that, by remaining seated in the courtroom, defendant voluntarily waived his right to be present. *People* v. *Reading* (1943), 307 Mich 616; *People* v. *Gant, supra.*

Three in-chamber conferences were reported, and from the reports we can clearly see that, at two of these, matters of law were discussed. Defense counsel at none of these conferences objected to defendant's absence, and it appears again that defendant's absence was voluntary. In any event, two of these three conferences do not merit further discussion. See *People* v. *Townsend* (1970), 24 Mich App 286; *People* v. *Camak* (1967), 5 Mich App 655; *Stein* v. *United States* (CA9, 1962), 313 F2d 518.

However, the third conference clearly concerned a matter involving a substantive right of the accused; his right to an impartial jury trial. The conference was called at the request of a juror, Mr. Lamphere. The entire conference is so short that we set it out in full:

*"The Court:* Mr. Lamphere, I believe you had a question which you wanted to take up with the court and counsel.

*"Mr. Donald Lamphere, Juror:* Yes, your Honor, I was sitting up there in the box watching these people in the audience. There is one lady out there who looks very familiar to me. I wonder if it makes any

difference. I don't know if she is related or not or is the mother of one of the children I had in school. I am a school teacher. Personally, I wouldn't think it would change my mind that much. She looks familiar to me and looks like the mother of a child I had in school. I'm trying to remember the lady's name.

"*The Court:* I don't think we have any problem here, Mr. Lamphere. I'm glad you mentioned it, however. The matter is of no consequence but we had to find out what was on your mind.

"Are you ready to proceed with final arguments, counsel?

"*Mr. Maki [Assistant Attorney General]:* We are, your Honor."

The participants then all returned to the courtroom and the trial continued. No objection was raised by the defense attorney to the proceeding. As it turned out, Mr. Lamphere became the foreman of the jury.

*People* v. *Medcoff, supra,* contains some strong language inveighing against judicial conferences with jurors out of the defendant's presence. Indeed, that case, which, reversed for a new trial, has much in common with this case as, in both, jury members were interrogated by a judge while in the midst of a trial and, of course, out of the defendant's presence, to determine if any bias existed. But there exists one major difference between the *Medcoff* fact situation and the one now presented. In *Medcoff,* the judge conducted his inquest out of everyone's presence, excluding also both the prosecutor and the defense attorney. Thus, much of the heady *dicta* of *Medcoff* is incompatible with this case where defendant's counsel was present, where his opportunity to object came and passed, and where, again, defendant's own absence must be attributed to the exercise of his own will. *People* v. *Sumeracki* (1950), 326

Mich 748; *People* v. *O'Keefe* (1953), 281 App Div 409 (120 NYS2d 349); *Brister* v. *State* (1957), 231 Miss 722 (97 So 2d 654).

The conviction of defendant is therefore affirmed. All concurred.