PEOPLE v CARROLL

PEOPLE v ROSS

1. ARREST—ILLEGALITY.

An unlawful arrest does not prevent the prosecution of a defendant.

2. CRIMINAL LAW—JURY—UNDUE INFLUENCE.

There was no prejudicial error in defendants' personal absence from inquiries into juror impartiality where defense counsel was present at all in-chambers meetings to discuss possible undue influence on the jury and at no time objected to the proceedings.

3. CRIMINAL LAW—TRIAL—APPEARANCE OF DEFENDANT—PREJUDICE.

Orderly court process often unavoidably requires use of restraints, prison garb, etc., as a matter of practical necessity, and without proof of a lack of such necessity coupled with resulting prejudice there was no error where a defendant claimed that his case was prejudiced because the jury saw him in a holding cell and overheard the bailiff making a phone call and telling someone to bring him over.

4. CRIMINAL LAW—TRIAL—SEPARATE TRIALS—DISCRETION.

Separation of trials of codefendants is a matter of judicial discretion.

5. BURGLARY—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES.

Failing to instruct on lesser included offenses in the crime of breaking and entering a building with intent to commit larceny was not error where no request was ever made for such instructions (MCLA 750.110, 768.29; GCR 1963, 516).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest §§ 116, 117.

[2, 3] 21 Am Jur 2d, Criminal Law §§ 235, 236, 240.

[4] 21 Am Jur 2d, Criminal Law § 127.

[5] 13 Am Jur 2d, Burglary §§ 67–72.

    21 Am Jur 2d, Criminal Law § 494.

[6] 13 Am Jur 2d, Burglary §§ 44–63.

6. BURGLARY—EVIDENCE.

>   Verdicts of guilty of breaking and entering a building with intent
>   to commit larceny were supported by sufficient evidence beyond
>   a reasonable doubt where there was testimony that all doors to
>   the building had been secured and that in the morning a door
>   was open, two snowmobiles were found outside the building and
>   at most one had been left outside, police officers had observed
>   three men attempting to attach a trailer loaded with the two
>   snowmobiles to a car, the three men fled when they noticed the
>   officers' approach, the car which the men abandoned at the
>   scene of the crime was owned by the girlfriend of one of the
>   defendants, and inside the car the police found a trailer license
>   plate that had been issued to another of the defendants (MCLA
>   750.110).

Appeal from Saginaw, Eugene Snow Huff, J. Submitted Division 3, June 5, 1973, at Lansing. (Docket Nos. 14531, 14854.) Decided August 28, 1973. Leave to appeal applied for.

Thomas W. Carroll and Charles L. Ross were convicted of breaking and entering a building with intent to commit larceny. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton,* Prosecuting Attorney, and *Daniel R. Connell,* Chief Assistant Prosecuting Attorney, for the people.

*David A. Goldstein,* Assistant State Appellate Defender, for defendants.

Before: HOLBROOK, P. J., and DANHOF and ADAMS,* JJ.

HOLBROOK, P. J. Defendants were found guilty after jury trial of breaking and entering of a building with intent to commit larceny. MCLA 750.110; MSA 28.305. The alleged crime was the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

breaking and entering of a building to steal snow-mobiles. On May 11, 1972, defendant Ross was sentenced from three to ten years in prison and on May 12, 1972, defendant Carroll was sentenced from two to ten years in prison. Defendants now raise seven issues on appeal.

Defendants first claim that their arrest was made without probable cause and that, therefore, their convictions must be reversed. Defendants do not argue that any evidence obtained as a product of their alleged illegal arrest should have been suppressed at trial. Assuming *arguendo* that the arrests were illegal, there is no authority for the proposition that the necessary consequence of an illegal arrest is that a defendant's subsequent conviction must be reversed. The rule, in fact, is that an unlawful arrest does not prevent the prosecution of a defendant. *People v Drummonds,* 30 Mich App 275; 186 NW2d 7 (1971); *People v Miller,* 235 Mich 340; 209 NW 81 (1926); *People v Nawrocki,* 6 Mich App 46, 53–54; 150 NW2d 516 (1967).

Defendants next claim that the trial court committed reversible error by conducting an inquiry into possible improper influences on the jury outside of the defendants' presence. On three occasions the trial judge conducted in-chambers inquiries into possible grounds for the disqualification of certain jurors. The defendants' lawyers were present at these inquiries but the defendants were not. The first inquiry occurred after the attorney for one of the defendants reported that he had observed a witness police officer in a conversation with a group of people including one prospective juror, with another prospective juror listening to the conversation. The defendants' attorneys apparently accepted the officer's explanation that the

juror had not joined the conversation and that the case had not been discussed because these jurors were not challenged either for cause or peremptorily. None of the attorneys asked that the prospective jurors be examined.

The second incident occurred shortly after opening statements when one of the jurors voluntarily indicated that he was acquainted with one of the witnesses. Again the trial judge conducted an inquiry in chambers with counsel present and again no challenge was made to the juror.

The third incident occurred during the testimony of a witness when one of the jurors realized she knew the witness's parents and so informed the court. After another in-chambers discussion the trial court excluded the juror from the jury panel upon defense counsel's request.

Defendants cite *People v Percy Harris,* 43 Mich App 746; 204 NW2d 734 (1972), and authorities noted therein for the proposition that a hearing on the issue of undue influence of a juror is a critical stage of trial at which defendant has a right to be present. This proposition has also been followed in *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955); *People v Nickopoulos,* 40 Mich App 146; 198 NW2d 691 (1972); *People v Palmer,* 28 Mich App 624; 185 NW2d 94 (1970); *People v Fountain,* 43 Mich App 489; 204 NW2d 532 (1972); *People v Bowman,* 36 Mich App 502; 194 NW2d 36 (1971); *People v Lyle Brown,* 37 Mich App 25; 194 NW2d 450 (1971). Accord, *People v Thomas,* 46 Mich App 312; 208 NW2d 51 (1973). In *Medcoff, Palmer,* and *Percy Harris,* both the defendant and his counsel were excluded during the trial court's inquiry into allegations of juror misconduct, and the Appellate Court found it to be reversible error. In *Nickopoulos* and *Fountain* this Court reversed and re-

manded for a new trial when the trial court conducted an investigation into allegations of jury tampering without the presence of either defense counsel or defendant. Contrariwise, in *Bowman* there was no error found when in-court and in-chambers conferences between the trial judge and defense counsel about matters of evidence, law, and possible juror prejudice were held in the absence of the defendant and no objections were made by defense counsel to any of the proceedings. Similarly, in *Lyle Brown* a conference was held in chambers with defense counsel present to discuss a note from a juror to the trial judge and this Court found no error in the defendant's personal absence from the conference. We find the distinction of counsel's presence or absence among the above cases a crucial one. In the instant case defense counsel was present at all in-chambers meetings to discuss possible undue influence on the jury and at no time objected to the proceedings. Moreover, the trial judge granted the defense counsel's request to exclude a juror as a result of the third conference. We therefore find no prejudicial error in defendants' personal absence from the inquiries into juror impartiality.

In addition, defendants argue that the trial court erred in the first in-chambers inquiry in not sua sponte interviewing the jurors who allegedly overheard the conversation of the witness as described above. *People v Levey,* 206 Mich 129; 172 NW 427 (1919), cited by defendants as authority that the lack of such an interview is reversible error, is considerably different from this case, since in *Levey* the judge in a similar situation asked *only* the jury foreman if another juror had been unduly influenced. Also, here both defense counsel were given the opportunity to have the jurors questioned and declined that opportunity.

The third claim made on appeal, raised by defendant Ross alone, is that his case was prejudiced because the jury saw him in a holding cell and overheard the bailiff making a phone call and telling someone to bring Ross over. Defendant cites *People v Duplissey*, 380 Mich 100; 155 NW2d 850 (1968), in support of his claim that prejudice against him occurred. In *Duplissey*, however, a defendant was handcuffed in court during trial despite the fact that he was guilty of no misconduct, though his codefendants were. There the Supreme Court found error in the denial of a separate trial for the defendant. The factual situation here is hardly as extreme as that in *Duplissey*. Moreover, orderly court process often unavoidably requires use of restraints, prison garb, etc., as a matter of practical necessity and without proof of the lack of such necessity coupled with resulting prejudice we find no error. *People v Havey*, 11 Mich App 69, 76; 160 NW2d 629 (1968); *People v William L Thomas*, 1 Mich App 118, 126; 134 NW2d 352 (1965).

The fourth claim made on appeal is that it was error to deny defendants' motion for separate trials. Defendants argue that at trial a trailer license plate registered in the third defendant's name, Robert Burns, some bolt cutters, bolts, and wires, all found in the 1958 Chevrolet abandoned at the scene of the crime by the three subjects suspected of breaking and entering, were improperly admitted into evidence since this evidence was allegedly not linked with the crime and not linked with them. Moreover, they contend that because Burns took the stand on his own behalf they were faced with the choice of testifying and disclosing prior breaking and entering convictions or being confronted with the possibility that the jury would

assume that since they did not testify they must have had something they were afraid to testify about. Furthermore, they assert that their counsel pointed out in their motion for separate trials that there were separate and inconsistent defenses among all three defendants.

Separation of trials of codefendants is, of course, a matter of judicial discretion. MCLA 768.5; MSA 28.1028; *People v Schram,* 378 Mich 145; 142 NW2d 662 (1966). In support of their contention that separate trials should have been granted, the defendants cite *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972). However, that case stands only for the proposition that in joint trials the jury should be instructed on the limited use to which some evidence may be put. The crime alleged here was the breaking and entering of a warehouse to steal snowmobiles by use of a trailer. The admission of the license plate, bolt cutters, etc., can be seen as evidence that such a crime was attempted or committed with use of these tools, regardless of the evidence's connection with any particular defendant. We find no fault with either the admission of the evidence or the lack of limiting instruction as to its admission. Moreover, both defense counsel expressed satisfaction with the judge's final instructions to the jury.

As to defendant Burns's testimony prejudicing defendants Ross's and Carroll's case, nothing in his story in any way implicated them in the crime. Furthermore, had there been separate trials for the defendants Burns could still have been called as a witness. While we appreciate the possibility that the defendants may have been questioned about prior convictions had they taken the stand, nothing in Burns's exculpatory attestations forced them to testify in their own behalf.

The fifth claim made on appeal is that the trial court erred in failing to instruct on lesser included offenses. However, no request was ever made for such instructions. The opinion of two Justices in *People v Herbert Van Smith, Jr,* 388 Mich 457; 203 NW2d 94 (1972), to the contrary notwithstanding, the law still remains that requests for such instructions must be made. MCLA 768.29; MSA 28.1052; GCR 1963, 516; *People v Burton,* 46 Mich App 20; 207 NW2d 415 (1973). See also, *People v Macklin,* 46 Mich App 297, 309; 208 NW2d 62, 69 (1973).

Defendants' sixth claim on appeal is that there was insufficient evidence to support a finding of guilty beyond a reasonable doubt. An abbreviated version of the facts shows that at approximately 12:54 a.m. on November 4, 1971, Officer Quick of the Saginaw Township Police Department saw a vehicle in the driveway of the Kruger Machinery Company. Officer Quick turned into the driveway. The officer observed three men attempting to attach a trailer loaded with two snowmobiles to a car. The three men fled when they noticed the officer's approach. Officer Quick did not pursue the men but rather radioed a report and asked for a tracking dog.

A bowling alley known as the Bowl-O-Mat is located between one-quarter and one-half mile from the scene of the crime. At about 1:05 a.m., the assistant manager of the Bowl-O-Mat saw two men, later identified as Ross and Carroll, enter the establishment. About five minutes later, defendant Burns entered the Bowl-O-Mat. After the first two men came in, one of them made a phone call. The assistant manager of the Bowl-O-Mat testified that Burns stated that he was having car trouble in the parking lot and had called Mike's Wrecker. Burns

testified that he had said that he was waiting for a ride because his car was at Mike's. The three men waited in the Bowl-O-Mat for a short time. A blue Maverick containing two women pulled up in front of the Bowl-O-Mat and the three men went out and got in the back seat. Shortly thereafter the car was stopped by the police and the two women and Burns, Ross, and Carroll were taken to the police station.

The car which the criminals abandoned at the scene of the crime was owned by Janice Ormes, who was Ross's girlfriend. Inside this car the police found a trailer license plate that had been issued to defendant Burns. Janice Ormes was one of the two women in the blue Maverick. The other woman was Rosemary Martinus, who was Burns's girlfriend.

The owner and employees of the Kruger Machinery Company gave testimony that indicated that all doors to the building were closed and secured when the last employee left the premises. In the morning the door was open. Two snowmobiles were found outside the building and at most one had been left outside by the Kruger Company. We believe, as did the trial judge, that the case could properly be submitted to the jury on the basis of these facts and that the verdicts of guilty were supported by sufficient evidence beyond a reasonable doubt.

Affirmed.

All concurred.