State of Maryland v. Eric Yancey, No. 56, Sept. Term, 2014, Opinion by Battaglia, J.


**CRIMINAL PROCEDURE – VOIR DIRE – DEFENDANT'S RIGHT TO BE PRESENT AT THE BENCH DURING VOIR DIRE QUESTIONING**

The trial court's exclusion of the defendant from the voir dire questioning of a prospective juror at the bench, after the defendant requested to be present, was not harmless when the juror was selected to serve on the jury and the State presented no proof of harmlessness.

Circuit Court for Montgomery County,
Maryland
Criminal Law No. 122222
Argued: March 11, 2015

IN THE COURT OF APPEALS OF
MARYLAND

No. 56

September Term, 2014

STATE OF MARYLAND

v.

ERIC YANCEY

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts
                    JJ.

Opinion by Battaglia, J.
McDonald, J., concurs.

Filed:  April 21, 2015

In the present case the State concedes error when the trial judge failed to accede to a request made by Eric Yancey, the Respondent herein, that he be brought to the bench for conferences during voir dire. Our sole issue, thus, is whether the judge's error could be considered harmless when a juror who was questioned at the bench, without Yancey's presence, was selected to serve. We shall hold that the judge's error was not harmless.[1]

Eric Yancey was charged with robbery with a dangerous weapon, conspiracy to commit robbery and first degree assault.[2] At the beginning of trial in the Circuit Court for Montgomery County, at approximately 11:00 a.m., after a discussion regarding the trial motions and other matters, Yancey's counsel asked if Yancey could approach the bench during voir dire conferences with prospective jurors, about which the judge deferred to the policy of the Sheriffs:

> [COUNSEL FOR YANCEY]: Your Honor, also, during voir dire, may my client approach during the bench conferences without the sheriffs standing right there?
> THE COURT: I don't know about without the sheriffs. What's the protocol on that, sheriffs? I'll go with whatever they normally do.
> THE SHERIFF: We'll have to make some phone calls first.
> THE COURT: All right. Whatever –

---

[1] We granted the State's Petition for Writ of Certiorari, 439 Md. 694, 98 A.3d 233 (2014), to answer the following question:
> Did the Court of Special Appeals incorrectly find reversible error where the trial court, after denying Yancey's request to approach the bench during *voir dire* examination of two jurors, only one of whom was selected to serve on the jury, stated that defense counsel could consult with Yancey before any decision regarding whether to strike a juror was made and found explicitly credible the seated juror's testimony that she could be "fair and impartial"?

[2] Before jury selection, the State entered a *nolle prosequi* to the first degree assault charge.

THE SHERIFF: Right now, he has leg irons on, so we don't want him up there.

THE COURT: Okay.

THE SHERIFF: With leg irons and a jury there. So –

THE COURT: Yeah. So I think counsel what you – whatever they – whatever the primary policy is, I'll go with that. So if they want to keep the leg irons on him, and you don't object to the jury seeing that, fine.

[COUNSEL FOR YANCEY]: I do object to the jury seeing that. And I would note that in some prior cases, it is essentially been left up to the sheriff's discretion. I've had plenty of cases where the sheriffs have said, "he has not given us any kind of problem. We have no problem with him being unescorted up to the bench["] –

THE COURT: That's fine. We have – well, I had some great sheriffs in my old days in Prince George's County, but our staff here is outstanding. And their protocol is well thought out, and I'm not going to make an exception. But I'll certainly go along with whatever the protocol is, and they're going to make some calls. We'll let you know –

[COUNSEL FOR YANCEY]: Thank you, Your Honor.

THE COURT: – what's going on with that because I find if we change it around, it causes problems. All right. We'll take a short recess. Take a short recess.

After a recess, the issue was resurrected. Yancey's counsel requested clarification from the judge as to whether Yancey would be allowed to attend bench conferences, to which the Sheriff responded negatively; the judge appeared to accede to the Sheriff's response by suggesting to Yancey's counsel that "you can just go back and talk to him then if you want about anything up there":

[COUNSEL FOR YANCEY]: Well wait, but we're bringing the jury in.

THE SHERIFF: He can stand.

[COUNSEL FOR YANCEY]: No, no, no, but if he's going to come up to the bench.

THE SHERIFF: He's not going to come up. So if he has some –

[COUNSEL FOR YANCEY]: Can we delay the jury coming in until we find the answer to this then?

[STATE'S ATTORNEY]: What's the answer?

THE COURT: Rose, hang on a second. Counsel, what's the problem?

2

[COUNSEL FOR YANCEY]: I understand the sheriff's department's still trying to determine whether they're going to allow him to come up to the bench.

THE COURT: But for the voir dire process, you can just go back and talk to him then if you want about anything up there.

Yancey's counsel, though, suggested to the judge that not permitting Yancey to approach would send a signal to the jury that would disadvantage him, which the judge dismissed and suggested that the attorney could "take it to Annapolis":

[COUNSEL FOR YANCEY]: I can, but I feel it's a – creates a very different moral atmosphere when he's allowed to come up to the bench, and the jurors can see him do that as opposed to when he's forced to remain at counsel table where they probably do understand what's going on about him being leg-ironed, or dangerous, or somehow a less trustworthy person when he's not allowed up to the bench.

THE SHERIFF: Your Honor, I have a lieutenant coming up in two minutes. So I'll have an answer for you –

THE COURT: All right.

THE SHERIFF: - it's just a matter of.

THE COURT: We're not going to tell the jury he's not allowed up here. The jurors aren't going to know whether he normally would come up or not. Most attorneys in civil cases, the clients don't come up, so it's not that it's – it's not going to be a glaring issue for the jury.

[COUNSEL FOR YANCEY]: Well –

THE COURT: I agree it would be if they see him in leg irons.

[COUNSEL FOR YANCEY]: From my experience from speaking with jurors after a trial, some of them said that they were shocked that the defendant was allowed to come up to the bench. And it did make them think of the person as being less dangerous when they were simply being allowed to do that. They said that if this person was –

THE COURT: Well that's anecdotal, counsel.

[COUNSEL FOR YANCEY]: I understand, but I'm relying on some of that anecdotal evidence for the reason that I do on much of the reasons people make any selections in jury selections. It's not so scientific.

THE COURT: All right. So if the sheriff's position is he can come up in leg irons or not all, then you can put it on the record. And you can take it to Annapolis.

[COUNSEL FOR YANCEY]: Thank you, Your Honor.

3

The judge continued to foreclose Yancey from approaching the bench, saying that, "Your client's not prejudiced in any way. I don't – what I'm saying is, he can't just come up to my – up to my desk whenever he wants even if he wasn't incarcerated. So he's not losing out on anything." The judge suggested that when voir dire began, the Sheriff would have the answer:

> THE COURT: We're going to need the jurors whether counsel wants them or not. Let's bring them in. I can give some preliminary things. Whether over your objection, I'm going to start. Please bring them in.
> [COUNSEL FOR YANCEY]: The defense does object.
> THE COURT: I don't bring your client up to the bench while I'm – counsel, I don't bring your client up to the bench while I'm addressing the jurors in the beginning.
> [COUNSEL FOR YANCEY]: Understood, but I understand that that's going to prevent him from –
> THE COURT: Even if some other jurors want that, I'm not going to do that.
> [COUNSEL FOR YANCEY]: I understand. I understand also, however, that that's
> THE COURT: I don't let the defendant wander the courtroom during the voir dire, either.
> [COUNSEL FOR YANCEY]: Right. But he is absolutely going to be foreclosed from coming up at all now, then, isn't that correct.
> THE COURT: Have a seat. You're not allowed to approach the bench, either, while I'm addressing the jury. He's not going to have any less restrictions than if he were here not incarcerated until you get the word from the lieutenant. Okay? So if you don't understand what I'm saying, that's fine. Just tag him. We'll see. I have to get the roll call. I have to do a lot of other things with that jury that I can start now. And it's two minutes to noon, and the jurors have been here since 8:30. Your client's not prejudiced in any way. I don't – what I'm saying is, he can't just come up to my – up to my desk whenever he wants even if he wasn't incarcerated. So he's not losing out on anything. Once we get to a point where everybody's approaching the bench, and you want him to come back and forth, we'll have an answer from the sheriffs.
> [COUNSEL FOR YANCEY]: Understood, but they'd have to go under the desk then and remove his leg irons while the jury is present.

After the venire arrived, the judge stated to the prospective jurors that, "Most of the questions can be answered right there where you stand. However, if a question is of a very sensitive nature or one that you would rather approach the bench on, you can do that at a certain time."[3] Midway through voir dire, the judge called only the attorneys to the bench; Yancey's counsel again advocated for Yancey's presence during any voir dire at the bench, to which the judge again demurred, saying if the Sheriff could not take the leg irons off, then "there's nothing we can do":

> THE COURT: *** Can we – I had a legal issue that I didn't get to finish. Do we – do we need to discuss that?
> [COUNSEL FOR YANCEY]: Yes, Your Honor.
> THE COURT: That'll take us a couple of minutes on that. Let me see what other questions we have before we. Just for this – just to – just for time purposes, can I just see the attorneys briefly, just the attorneys briefly?
>
> BEGIN BENCH CONFERENCE
>
> THE COURT: What's our status on the issue with the leg irons?
> [COUNSEL FOR YANCEY]: I don't know.
> THE COURT: Do we know yet?
> [STATE'S ATTORNEY]: I don't know what the issue is.
> THE COURT: Oh we don't know.
> [STATE'S ATTORNEY]: We can ask.
> THE COURT: Why don't we ask the – Deputy, on an unrelated matter, can we ask you a question on something? Maybe they'll know. If not, we can always break for lunch. Do we have an answer on the?
> THE SHERIFF: Still didn't get clearance. However, we would have to – lawyer. Still can't – attorney – [unintelligible].
> THE COURT: Okay.

---

[3] The juror who is the subject of the issue presented herein, Juror 220, stood and responded in open court to two questions, one of which was whether anyone had a family member with legal training, and the other being whether anyone had a medical issue or disability that would prevent them from participating as a juror. The judge also asked whether any prospective juror or a family member had ever been charged with a crime, to which Juror 220 asked to approach the bench. The judge replied, "We're going to take that a little bit later".

5

THE SHERIFF: [unintelligible].

THE COURT: All right. Let us know. Just give them a note, or let them know. All right. We do have a disadvantage with the construction on this building right now. We don't have the ability for the sheriffs to take him to where they need to through the regular thing, so what I'm going to do is. I'd like to proceed with selecting jurors. We're going to get one of two answers. We'll get an answer they won't take the leg irons off. In that situation, there's nothing we can do.

[COUNSEL FOR YANCEY]: I understand. However not having that answer, the defense would be objecting. We would also note that them having to come in because the elevators not working would not change what they'd have to do at the end of each proceeding. They'd have to take him out anyway. And the sheriffs' arguments essentially about why he didn't necessarily want to have to take the cuffs off him, his feelings about whether they should adjust the defendant or not I don't think are relevant. He's not a party to the case in that sense. As we mentioned, we do believe he's prejudiced by not being able to exert a moral influence by being present at the bench conferences.

THE COURT: There was one lady that mentioned that she wanted to eat pretty soon. One possibility to do this is I'll ask a few more questions. We haven't had anybody needs to approach the bench yet which is good. We could take a recess and then come back and finish at 1:30 with this jury. And then in the meantime, we'll get the answer and then go from there. So maybe that's the better way to go. So I'll try and ask a few more questions without listening to any – without any bench responses, and then go from there.

Apparently, before 1:00 p.m., a bench conference with a prospective juror occurred, during which Yancey was not present. Shortly thereafter, the judge restated, "I've seen absolutely no prejudice to your client for not listening to the bench conference of the one juror" and again asserted that Yancey's counsel can "go back and fill [Yancey] in without making it obvious before we make any decision on that witness if you want to":[4]

THE COURT: *** I tell you what. We only have – it looks like we're only going to have maybe one person. I'm going to – because the jury's now seen that I've just brought the attorneys up. I'm going to let her come up without

---

[4] Another juror, Juror 179, appeared during a bench conference during which Yancey was not present but was struck from the jury.

getting the word on the sheriffs. And then I'll get the selections on the jury. And then we'll break for lunch. And then hopefully we'll get the answer with respect to legal bench conferences as the trial proceeds. If you object, that's fine.

[COUNSEL FOR YANCEY]: The defense does have an objection, yes.

THE COURT: But it's five after 1:00, and I've seen absolutely no prejudice to your client for not listening to the bench conference of the one juror. Or there may be a few other jurors, and I'll certainly couch it in terms of – I'll let you go back and fill him in without making it obvious before we make any decision on that witness if you want to.

The judge continued voir dire in open court; eventually he called Juror 220 to the bench with "just the attorneys", without Yancey present, wherein the juror divulged that her two brothers were "brought up on" drug and sexual assault charges. In response to the question, "Would you be able to listen to the facts of this case and render a fair and impartial verdict?" she stated "Yeah"; Juror 220 eventually was selected to serve on the jury.

When trial resumed after lunch, at approximately 2:30 p.m., the Sheriff announced that there was no longer a problem with Yancey approaching the bench, and the judge permitted Yancey's leg irons to be removed. Yancey was permitted to approach the bench, although voir dire had ended.

Yancey appealed to the Court of Special Appeals. Our intermediate appellate court, in an unreported opinion, reversed Yancey's conviction and concluded that his exclusion from bench conferences during voir dire was not harmless beyond a reasonable doubt.[5] In

---

[5] Yancey raised a number of questions on appeal to the Court of Special Appeals, only one of which, related to the instant case, was addressed. Yancey's additional questions were:

2. Did the circuit court abuse its discretion in permitting the attorney for a State's witness to counsel him during his testimony?

7

reaching its conclusion, the court began by noting that under Maryland Rule 4-231,[6] "a defendant has the right to be physically present during all critical stages of trial, including at voir dire proceedings", which "'includes the substantial right of the prisoner to be brought *face to face* with the jurors at the time when the challenges are made,'" quoting *Bedford v. State*, 317 Md. 659, 672, 566 A.2d 111, 117 (1989) (emphasis added by *Bedford*), as well as the right to "'be afforded every opportunity to 'size up' the jury and to fully examine each juror so as to assist counsel in determining which jurors should be disqualified for cause or even for no cause at all'", quoting *id.* at 673, 566 A.2d at 117. The court concluded that the error was not harmless beyond a reasonable doubt because it could

---

3. Did the circuit court err or abuse its discretion in restricting defense counsel's cross-examination of a State's witness?

4. Did the circuit court abuse its discretion in refusing to excuse a seated juror?

5. Did the circuit court err in refusing to propound defense counsel's proposed jury instruction on conspiracy?

[6] Maryland Rule 4-231 provides, in pertinent part:

**Presence of Defendant.**

(a) **When presence required.** A defendant shall be present at all times when required by the court. A corporation may be present by counsel.

(b) **Right to be present—Exceptions.** A defendant is entitled to be physically present in person at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4-247 and 4-248.

(c) **Waiver of right to be present.** The right to be present under section (b) of this Rule is waived by a defendant:

(1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

(2) who engages in conduct that justifies exclusion from the courtroom; or

(3) who, personally or through counsel, agrees to or acquiesces in being absent.

not "rule out the possibility that, had Yancey been permitted to participate in voir dire at the bench, he might have made some material contribution to his attorney's efforts".[7]

---

[7] The unreported opinion of the Court of Special Appeals very ably recites the rationale underpinning Rule 4-231 and the right to be present at voir dire proceedings at the bench:

> A criminal defendant's right to be present at every stage of trial is a common-law right preserved by Article 5 of the Maryland Declaration of Rights and protected, in some measure, by the Sixth and Fourteenth Amendments to the United States Constitution. *Bunch v. State*, 281 Md. 680, 683-84 (1978). In addition, under Md. Rule 4-231, a defendant has the right to be physically present during all critical stages of trial, including at voir dire proceedings. *Bedford v. State*, 317 Md. 659, 670 (1989). The right to be present encompasses a right to participate in bench conferences, including conferences concerning the impaneling of a jury and the possible disqualification of jurors. *Bunch*, 281 Md. at 686-88; *see also Bedford*, 317 Md. at 672-75; *Haley v. State*, 40 Md. App. 349, 353, *cert. denied*, 284 Md. 744 (1978).
>
> In *Bunch*, the Court of Appeals, looking to settled common-law principles, concluded that the right to "presence" required more than just physical presence; it also required that the defendant be able to aid his or her counsel and participate meaningfully in the selection of jurors. *Bunch*, 281 Md. at 687 (citing *Hopt v. Utah*, 110 U.S. 574, 578 (1892)). Similarly, in *Bedford*, the Court of Appeals stressed that the right to presence "includes the 'substantial right[] of the prisoner to be brought *face to face* with the jurors at the time when the challenges [are] made,'" *Bedford*, 317 Md. at 672 (quoting *Lewis v. United States*, 146 U.S. 370, 376 (1892)) (emphasis added by *Bedford*), as well as the right to "be afforded every opportunity to 'size up' [the] jury and to fully examine each juror so as to assist counsel in determining which jurors should be disqualified for cause or even for no cause at all." *Bedford*, 317 Md. at 673; *see also id.* at 673 ("it is the defendant who should be given the opportunity to read the faces of his jurors").
>
> Thus, in *Bunch*, 281 Md. at 688, the Court of Appeals held that the trial court had violated the defendant's rights under the Maryland Rules because it failed to afford him the right to approach for a mid-trial bench conference concerning juror disqualification. Likewise, in *Bedford*, 317 Md. at 668-75, the Court disapproved of a procedure in which the circuit court, for security reasons, required a defendant in a capital-murder case to be seated about six feet from his counsel and to be flanked by deputy sheriffs during voir dire. Indeed, the Court expressed its disapproval in *Bedford* even though defense counsel had the ability to step away from the bench and to consult with the defendant during voir dire. *Id.*

The State concedes error before us, however.[8] The issue, then, is squarely before us to determine whether the judge's unwillingness to overrule the Sheriff's Office or to pause voir dire until the Sheriff responded to his inquiry about the leg irons before allowing Yancey to approach the bench during voir dire conference constituted harmless error. Heretofore, in *Noble v. State*, 293 Md. 549, 569-70, 446 A.2d 844, 854 (1982), we addressed whether the failure to afford the defendant the right to be present at the bench during voir dire questioning, after which the juror was not seated, was harmless error. We determined from the record that, beyond any reasonable doubt, "Noble was not harmed by his absence from the voir dire questioning of a prospective juror" because, "when the prejudice or possible prejudice of a juror or prospective juror is against the defendant, and that juror is excused at a proceeding from which the defendant is absent, the defendant would not ordinarily be harmed." *Id.* at 571, 573, 446 A.2d at 855, 856.

In *Noble* we took the opportunity, in dicta, however, to reflect about a situation analogous to the present one: "When a defendant is absent from a stage of the trial involving the possible disqualification of jurors or prospective jurors for bias, and one or more of them are ultimately retained, it would normally be difficult to conclude that the violation of the defendant's right to be present was harmless." *Id.* at 571, 446 A.2d at 855. We noted that the standard for determining whether the error was harmless or not included

---

[8] During oral argument, the State, in response to a question from the Bench, noted that Yancey's counsel did not exercise all of his peremptory challenges. The use of peremptory challenges by counsel, though, is not a factor that we have considered when examining whether a defendant's inability to exercise the right to be at the bench during voir dire conferences is harmless.

10

that, "Prejudice will not be conclusively presumed. If the record demonstrates beyond a reasonable doubt that the denial of the right could not have prejudiced the defendant, the error will not result in a reversal of his conviction." *Id.* at 568-69, 446 A.2d at 854.

In applying our standard of review to determine harmlessness or not, we are mindful of the State's arguments, but are not convinced by them. The State initially argues, citing *State v. Nevels*, 223 N.W.2d 668 (Neb. 1974), and *People v. Carroll*, 211 N.W.2d 233 (Mich. App. 1973), that it is counsel's presence at bench conferences during voir dire, not the defendant's presence, that is crucial when a defendant is excluded; if this norm were true, then error in the present situation would be the issue. It is not.[9] *Nevels* and *Carroll* are also not relevant as they address error when a defendant was excluded from in-chambers discussions about juror impartiality, rather than exclusion from voir dire bench conferences. *Nevels*, 668 N.W.2d at 669; *Carroll*, 211 N.W.2d at 234-35.

The State then seemingly argues, in a harmless error situation, that the burden is on the defendant to prove harmlessness, citing *United States v. Alessandrello*, 637 F.2d 131 (3d Cir. 1980), and *Commonwealth v. Owens*, 609 N.E.2d 1208 (Mass. 1993). We have steadfastly maintained, however, that the State has the burden to prove harmlessness. *Perez v. State*, 420 Md. 57, 21 A.3d 1048 (2011) (burden on State to prove harmlessness when defendant was not present and was unaware of judge's response to multiple jury notes);

---

[9] The State, additionally, cites *United States v. Thomas*, 724 F.3d 632 (5th Cir. 2013), *United States v. Bascaro*, 742 F.2d 1335 (11th Cir. 1984), and *United States v. Chrisco*, 493 F.2d 232 (8th Cir. 1974), for the proposition that it is not error when the defendant is present for the substantial majority of the jury selection process. All three cases are inapposite, because the issue was whether the trial court erred in excluding the defendant during impanelment of the jury; voir dire was not in play.

*Denicolis v. State*, 378 Md. 646, 837 A.2d 944 (2003) (burden on State to prove harmlessness when defendant was not present when trial judge responded to a jury note); *Taylor v. State*, 352 Md. 338, 722 A.2d 65 (1998) (burden on the State to prove harmlessness when trial judge responded to a list of jury questions outside defendant's presence); *Dorsey v. State*, 276 Md. 638, 658-59, 350 A.2d 665, 678 (1976) (in a harmless error situation, we have stated "that the beneficiary of error [is] required to demonstrate, beyond a reasonable doubt, that such error did not contribute to the conviction").

The State further argues that Yancey's exclusion from the bench conference during voir dire questioning of Juror 220 was for just a brief period of time and, therefore, harmless, citing *United States v. Gordon*, 829 F.2d 119, 129 (D.C. Cir. 1987), for the proposition that a defendant's exclusion from the <u>entirety</u> of bench conferences during voir dire questioning is that which constitutes error that is other than harmless. *Gordon*, then, would seemingly support that the error in the present case cannot be harmless, because Yancey was excluded from the <u>entirety</u> of all of the bench conferences regarding voir dire.

Were somehow the time period that Juror 220 was questioned at the bench excised for analysis, Yancey's absence for even that brief period has not been proven by the State to be harmless. During the brief period of time at the bench, Juror 220 responded to a pivotal question regarding potential bias in which she offered at the bench that, "One of my brothers was brought up on drug charges and the other one for sexual assault." The discussion with Juror 220 about potential bias was the type of colloquy that underlies the bases for a defendant's presence at voir dire bench conferences. Such dialogue, "intended to search out a prospective juror's bias, hostility or predisposition to believe or discredit

12

the testimony of potential witnesses" supports that a defendant "have the opportunity to assess the juror's facial expressions, demeanor and other subliminal responses." *People v. Antommarchi*, 604 N.E.2d 95, 97 (N.Y. 1992) (internal quotation marks omitted).[10]

The State also proposes that excluding a defendant from voir dire conferences can be rendered harmless, when there was proof that counsel did confer with the defendant, citing *United States v. Cuchet*, 197 F.3d 1318 (11th Cir. 1999), *United States v. Washington*, 705 F.2d 489 (D.C. Cir. 1983), and *United States v. Dioguardi*, 428 F.2d 1033 (2d Cir. 1970). Initially, we would note, as the Court of Special Appeals did, that in *Bedford*, 317 Md. at 673-74, 566 A.2d at 118, we side-stepped the issue of whether side bars between a defendant and counsel would cure any error when the defendant was excluded from voir dire bench conferences. Even assuming for the sake of argument, however, that such conferences between a defendant and counsel could render the defendant's exclusion harmless, the State in the instant case has not proven that any dialogue actually occurred; in *Cuchet* and in *Washington*, the record reflected that the defendant had time to confer with counsel about jurors' responses to voir dire questions at the bench from which the defendant was excluded. *Cuchet*, 197 F.3d at 1321; *Washington*, 705 F.2d at 498.[11]

---

[10] Although we have not embraced the *per se* harmfulness seemingly reflected in *People v. Antommarchi*, 604 N.E.2d 95 (N.Y. 1992), we do find the quoted language persuasive.
[11] *United States v. Dioguardi*, 428 F.2d 1033, 1039-40 (2d Cir. 1970), is inapposite because the defendants had waived appellate review since they had not asked to be present at voir dire questioning at the bench.

The State's "proof" is largely speculative that Yancey was not prejudiced by his exclusion from the voir dire bench conferences. The State theorizes that Juror 220 must have been "fair and impartial" because, upon questioning, she reassured the trial court to that effect;[12] muses that, "there is no indication in the record that Juror 220 made any look or gesture that was noticed by the judge or either attorney", so that "nothing in what Juror 220 said or did at the bench revealed a 'sudden impression' or 'unaccountable prejudice' from which Yancey would want to exclude her from the jury"; and speculates further that Yancey could adequately observe the demeanor of Juror 220 in open court, somehow implicating personal presence at the bench. Finally, the State prematurely speculates that Juror 220 was more likely than not to be sympathetic to Yancey because her brothers had been "brought up" on drug and sexual assault charges. Certainly, these tidbits of speculation do not proof of harmlessness make.

The bottom line in the present case is that Yancey requested to be at the bench during voir dire bench conferences. The trial judge deferred his decision-making entirely to the Sheriffs with respect to how to protect Yancey's rights as well as any public safety concerns; only at the end of voir dire did he allow Yancey to participate in bench conferences. The judge repeatedly dismissed Yancey's counsel's arguments about his client's disadvantage when excluded and, instead, opined that, based on his observations,

---

[12] The State's Petition for Certiorari also noted that Juror 220 observed Yancey in leg irons in the hallway of the courthouse at the end of the first day of trial and that, when examined by the court, she stated that she could be fair and impartial.

Yancey was not prejudiced, without providing any bases. The judge's errors were not harmless.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

IN THE COURT OF APPEALS
OF MARYLAND

No. 56

September Term, 2014

STATE OF MARYLAND

v.

ERIC YANCEY

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Concurring Opinion by McDonald, J.

Filed: April 21, 2015

I join in the judgment, but not in the Court's opinion. The basis for reversing the conviction in this case boils down to Mr. Yancey's absence from a bench conference with one juror during voir dire of the jury panel. The rationale is that a defendant is entitled to advise his attorney whether he wishes to have a potential juror struck from the jury, whether for cause or not, and it is therefore important for the defendant to have an "adequate opportunity to gain a good perception of the potential juror[]." *Bedford v. State*, 317 Md. 659, 673-74, 566 A.2d 111 (1989).[1] The Court holds that the error was not harmless because Mr. Yancey was not immediately present when Juror 220, who had previously responded to a question in open court, briefly responded to three questions in a colloquy at the bench with counsel and was ultimately seated on the jury.

I would be willing to find harmless error if the record were clear that Mr. Yancey, who presumably had already observed Juror 220 in open court, had an opportunity to consult with defense counsel following the bench conference with her – Mr. Yancey had unused

---

[1] Defense counsel stated a different rationale for his objection in the trial court. His objection was based on the perception that members of the jury panel would have of Mr. Yancey if he were permitted to come to the bench ("... creates a very different moral atmosphere when he's allowed to come up to the bench ... it d[oes] make them think of the person as being less dangerous ...") rather than on Mr. Yancey's perception of members of the jury panel.

It is also notable that this Court's disapproval of the jury selection process in *Bedford* was based in large part on the fact that the procedure in that case hampered the ability of the defendant to communicate confidentially with his counsel about potential jurors. In any event, although disapproving the procedure used in that case in dicta, the Court explicitly did not conclude that it was reversible error. 317 Md. at 675.

1

peremptory challenges available at the end of the voir dire process and could have struck Juror 220 if he had any concern about her based on his absence from the bench conference and had an opportunity to communicate that concern to his counsel.