PEOPLE v NICKOPOULOS

1. Criminal Law—Investigating Jury Tampering—Defendant's Presence.
   The presence of a defendant and his attorney when the court is conducting an inquiry concerning jury tampering is a constitutional right; such an inquiry is a critical stage of the proceedings involving substantial rights of a defendant.

2. Criminal Law—Investigating Jury Tampering—Defendant's Presence.
   A defendant denied the right to be present at an inquiry concerning jury tampering, absent a waiver of his right to be present, is entitled to a new trial without proof of actual injury or prejudice.

Appeal from Wayne, Robert J. Colombo, J. Submitted Division 1 March 13, 1972, at Detroit. (Docket Nos. 10781, 12024.) Decided April 25, 1972.

William Nickopoulos and Thomas Nickopoulos were convicted of conspiracy to commit murder. Defendants appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Neil H. Fink,* for defendant on appeal.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 288 *et seq.*
[2] 21 Am Jur 2d, Criminal Law § 301.

Before: R. B. BURNS, P. J., and HOLBROOK and QUINN, JJ.

HOLBROOK, J. Thomas and William Nickopoulos, who are brothers, were tried by a jury and convicted of conspiracy to commit murder by the use of poison. MCLA 750.157a; MSA 28.354(1), and MCLA 750.316; MSA 28.548.

William Nickopoulos and the victim, Lyle Griffith, were jail inmates. In 1968, the testimony of Griffith at a trial was instrumental in William Nickopoulos being convicted of armed robbery and receiving a sentence of from 10 to 20 years. Griffith died in jail as a result of ingesting cyanide poison on February 2, 1969. It was the people's theory that the motive was revenge for William's conviction and sentence and that William gave Griffith a cupcake containing the deadly poison. In only a couple of minutes Griffith died after eating the cupcake. Proof of conspiracy between the defendant brothers was based upon the testimony of co-conspirators who allegedly assisted Thomas Nickopoulos in obtaining the poison used to kill Griffith.

Defendants raise three issues on appeal which we consider in proper order.

I.

Did the trial court's examination of jury members concerning possible jury tampering by telephone, without the knowledge or presence of defendants, constitute reversible error?

During the trial it came to the attention of the trial judge that five of the jurors had received telephone calls from individuals concerning the decision of the case. The trial judge, with the court reporter present, conducted interviews with these

jurors in chambers. The first juror interrogated reported that the telephone caller said in part, "that guy is no good, I want you to find him guilty". The second reported that his telephone caller said in part, "you be in court tomorrow, those people are no good, and you should find them guilty". The third reported that the telephone caller said in part, "well, I want them found guilty, * * * they hurt one of us, and I want them found guilty, guilty all the way. * * * And don't say anything to anybody". The fourth juror reported that his telephone caller said in part, "don't find the defendant guilty or else". The fifth juror when interrogated reported that the telephone caller said in part, "when you go to court in the morning * * * find them guilty". During these interviews neither the defendants nor their counsel were informed of the proceedings and were not present.

Fourteen jurors had been accepted and sworn at the beginning of the case. After final argument and prior to giving the charge to the jury the trial judge, in the absence of the jury, stated in part as follows:

"It is with a great deal of reluctance that I bring this up but it has to be brought up and it has to be said.

"There has been a blatant effort to tamper with the jury in this case. I have been aware of it from the start. I have conducted interviews with the jurors involved. I deliberately said nothing to any of the participants in this case but I did summon in the Criminal Investigation Bureau of the City of Detroit Police Department and they have been conducting a surveillance and an investigation."

Thereupon the court on its own motion excused two of the five jurors who had reported that they had received telephone calls for the reasons that

one had been threatened, and the other had reported that the telephone call had caused him to be upset and his family afraid, and therefore he desired to be excused.

Counsel for defendant William Nickopoulos then moved for a mistrial which was denied.

The case proceeded and the remaining twelve jurors found the defendants guilty as charged.

In the case of *People v Medcoff,* 344 Mich 108, 116–118 (1955), involving the questioning of the jury concerning alleged misconduct of certain jurors when defendant and his counsel were not present, it is stated:

"There is involved in the instant case the right of an accused to be present at a proceeding where the court considers existence or nonexistence of misconduct on the part of the jurors. It goes without saying that the right to a trial by an impartial jury is a most fundamental one. The right of the accused to be present at all stages of the trial where his substantial rights might be affected is an equally fundamental one. Misconduct on the part of a juror during the progress of a trial is presumptively a ground for a new trial. *Cooper v Carr,* 161 Mich 405 [1910]; *cf., In re Ascher,* 130 Mich 540 (57 LRA 806) [1902]. Courts have held that the presence of the accused is required when jurors are being examined as to their qualifications. *State v Thomas,* 128 La 813 (55 So 415) [1911]; *State v Smith,* 90 Mo 37 (1 SW 753 [as *State v Crockett],* 59 Am Rep 4) [1886]; *State v Martin,* 120 W Va 229 (197 SE 727) [1938]. The making or trying of challenges to jurors is an essential part of the trial and requires the presence of the accused. *Lewis v United States, supra* [146 US 370; 13 S Ct 136; 36 L Ed 1011 (1882)]; *Hopt v United States, supra* [110 US 574; 4 S Ct 202; 28 L Ed 262 (1884)]. It would seem that the examination of a jury during the progress of the trial as to alleged misconduct affects a defendant's substantial rights to a trial by an impartial jury at least as much, if not more, than does an examination for qualifications or the making of challenges. All con-

cern the impartiality of the jury which cannot be considered a preliminary, formal or inconsequential matter.

"We recognize that all that transpired between judge and jurors as well as the court's conclusion that there had been no misconduct is in the record before us. Therefore, it is argued that defendants have shown no prejudice. However, the abrogation of defendants' right to be present is not determined from the result and review thereof of the court's inquiry but rather from the mere fact that during the inquiry defendants were not given an opportunity to exercise those privileges which their right to be present affords them. Where such fundamental rights are denied, the guilt or innocence of the accused is not concerned and neither party is put to the burden of showing actual injury or prejudice or the lack of it. Injury is conclusively presumed."

*People v Palmer,* 28 Mich App 624, 628 (1970), involved the legality of excluding defendant and his counsel from an inquiry by the court of the jurors as to whether they had read local newspaper articles about the case. After quoting from the case of *People v Medcoff, supra,* the Court stated:

"The case at bar is indistinguishable factually from *Medcoff* and is devoid of any conduct on the part of defendant which could be construed as a waiver of this right. See *People v. Gant,* 363 Mich 407 (1961); *Diaz v. United States,* 223 US 442; 32 S Ct 250; 56 L Ed 500 (1911); *Illinois v. Allen,* 397 US 337; 90 S Ct 1057; 25 L Ed 2d 353 (1970). As a result, we are persuaded that the holding of the *Medcoff* case requires a reversal of this conviction. In so holding we stress that it is not the importance of the crying episode and its possible effect on the jury which moves us to reverse. But, rather, the importance of protecting the defendant's right to be present during the judge's inquiry; our Supreme Court has declared that a defendant denied the right to be present is entitled to a new trial without proof of actual injury or prejudice."

Also see, *People v Lyle Curtis Brown,* 37 Mich App 25 (1971), and *People v Bowman,* 36 Mich App 502 (1971).

It is true that in the *Medcoff* and *Palmer* cases the trial court's inquiries had to do with alleged misconduct of the jurors whereas in the instant case the inquiry pertained to the alleged jury tampering by anonymous telephone callers. We determine that this difference does not render the rulings in *Medcoff* and *Palmer* any the less applicable. Jurors talking to others about the case, reading of newspaper articles on the case by the jurors, and attempted jury tampering by individuals through anonymous telephone calls, all exert very probable influences upon the jurors that would tend to interfere with the obtaining of an impartial jury verdict.

The defendants and their attorneys had a constitutional right to be present at the inquiry concerning jury tampering conducted by the trial judge in this case. We rule that such an inquiry constitutes a critical stage in the proceedings.

The failure of the court to afford defendants in the instant case the right to be present at the inquiry, absent a waiver of this constitutional privilege, entitles defendants to a new trial without proof of actual injury or prejudice. *People v Medcoff, supra.*

This ruling is in no sense to be construed as a disapproval or censure of the trial court's action in questioning the jurors concerning the phone calls. This was both necessary and commendable. Judicial objection is based upon the defendants' right to be present at every stage of their trial where their substantial rights might be affected. MCLA 768.3; MSA 28.1026; Const 1963, art 1, § 20.

## II.

Was it reversible error for the trial court to permit testimony concerning a prior criminal conviction of defendants without thereafter cautioning the jury with respect to the limited purpose for which the evidence could be received?

The testimony was admissible under MCLA 768.27; MSA 28.1050, to show motive. The rule as to the requirement of the court to give an instruction limiting the purpose for which the evidence could be considered is now controlled by the decision in the case of *People v Kelly,* 386 Mich 330 (1971), and shall be followed on retrial.

## III.

Did the trial court commit reversible error in denying defendants' motion for a directed verdict?

The appellants assert that there was insufficient evidence presented to show the conspiracy charged and for the case to be submitted to the jury. After a careful review of the record and evidence presented, we conclude that defendants are incorrect and that there was sufficient evidence, if believed by the trier of fact, to justify a verdict of guilty of the crime charged.

Reversed and remanded for a new trial.

All concurred.