PEOPLE v FOUNTAIN
PEOPLE v RONALD CARTER
PEOPLE v ANDERSON

OPINION OF THE COURT

1. CRIMINAL LAW—JURY—EXCUSING JUROR—DISCRETION—STATUTES.

Trial judge's reason was valid and there was no abuse of discretion where the judge excused a juror pursuant to a statute for a reason which would support an excusal on motion and the judge quite properly saw to it that a record was available for post conviction consideration and her refusal to divulge her reason to counsel does not require reversal in the circumstances of the case (MCLA 768.18).

2. TRIAL—INSTRUCTIONS—COURT RULES—APPEAL AND ERROR—OBJECTION.

A subsection of a court rule provides that a judge *may* direct the parties to file written requests for instructions at any time and it also provides that the parties *may* file such requests on their own initiative at or before the close of proofs; another subsection of that court rule provides that no party may assign as error the giving or failure to give an instruction unless he objects thereto *before the jury retires* to consider the verdict, stating specifically the matter to which he objects and the grounds of objection; the extent of the court's obligation to charge in the absence of a request to charge or objection to the charge as given and the question whether the court may properly refuse to grant a request first voiced by objection to the court's instruction as given depends on the reviewing

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur 2d, Jury §§ 120, 121.
[2] 53 Am Jur, Trial §§ 824, 825, 831.
[3] 53 Am Jur, Trial §§ 286, 796–802.
[4] 40 Am Jur 2d, Homicide §§ 525, 532–535.
[5] 40 Am Jur 2d, Homicide §§ 568–582.
Fact that gun was unloaded as affecting criminal responsibility, 79 ALR2d 1412.

court's appraisal of the importance of the instruction not given (GCR 1963, 516.1, 516.2).

3. CRIMINAL LAW—INSTRUCTIONS—EVIDENCE—LESSER INCLUDED OFFENSE—REQUESTED INSTRUCTIONS—APPEAL AND ERROR.

The law is well established that where a request to charge has been made, the duty of the trial court is determined by the evidence and if the record contains evidence which would support a conviction of a lesser included offense, it is reversible error to deny the request to charge on such included offense.

4. HOMICIDE—SECOND-DEGREE MURDER—INSTRUCTIONS—REQUESTED INSTRUCTIONS—MANSLAUGHTER—ASSAULT WITH INTENT TO DO GREAT BODILY HARM LESS THAN MURDER—EVIDENCE.

Trial judge erred when she limited the possible verdict to murder in the second degree or not guilty where instructions on manslaughter and assault with intent to do great bodily harm less than murder were requested before the judge instructed the jury and the evidence would have supported a verdict on either of these crimes.

OPINION CONCURRING IN PART AND DISSENTING IN PART

M. S. COLEMAN, J.

See headnote 1.

5. HOMICIDE—MANSLAUGHTER—ASSAULT WITH INTENT TO DO GREAT BODILY HARM—INSTRUCTIONS—BRIEFS—APPEAL AND ERROR.

*Issue relative to jury instructions on manslaughter and assault with intent to do great bodily harm less than murder was neither briefed nor argued before the Michigan Supreme Court by either party; it is outside the Court's role to consider an issue not properly before the Court.*

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and McGregor and Borradaile, JJ., reversing and remanding for new trial Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted October 2, 1973. (No. 4 October Term 1973, Docket No. 54,489.) Decided September 6, 1974. Rehearing denied November 4, 1974.

43 Mich App 489 affirmed.

Joe Fountain, Ronald Carter, and Melvin Ander-

son were convicted of second-degree murder. Defendants appealed to the Court of Appeals. Reversed and remanded for new trial. The people appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendants on appeal.

T. G. K<small>AVANAGH</small>, J. This is an appeal from a decision of the Court of Appeals which reversed their conviction and awarded new trials to each of the defendants.

The defendants were convicted of second-degree murder by a jury in recorder's court.

During the course of the trial 1 of the 14 jurors comprising the panel was importuned by someone who talked to that juror about the case. She reported the incident to the judge in chambers:

*"The Court:* I want you to be perfectly frank in what you are saying to me. I don't know what it is. The only reason I am having a record made is in the event it is necessary. But I can assure you if you have any fear or anything like that, I will not make it public.

"I am sorry. I don't recall your name.

*"Mrs. Buckner:* Phyllis Buckner.

"My husband's aunt called me Friday and said a friend of hers seen me here in Court. And she called and asked if I was on the Jury that five fellows were involved. I asked her why. She said, 'This friend saw you.' It is her sister-in-law's son is one of the defendants. She said she wished she could have seen me first. She would have offered me some kind of money to try to help them out. I said, 'It is nothing I can do about it.

It is not left up to me.' She said, 'She knew it was you. She seen you at Sears before.' I told her, 'Don't approach me.' I don't know who it is, who the son is or the mother.

"*The Court:* Now, let me ask you this, Mrs. Buckner: You don't know any of the people involved?

"*Mrs. Buckner:* No.

"*The Court:* Would it bother you in any way in making a determination in this case?

"*Mrs. Buckner:* Well, since she knows where I am working at, I am afraid in the case it might be a guilty verdict that she might want to do something to me."

The judge took the matter under advisement, and when approached by the attorneys who had observed the juror going into the judge's chambers, told the attorneys that she was considering excusing the juror.

At the court's request, counsel for all of the defendants except defendant Carter stipulated that the juror could be excused. Counsel for Carter demanded disclosure of the nature of the discussion with the juror and, upon the court's refusal to divulge the topic of the conversation, moved for a mistrial arguing that the defendant has a right to know the reason for dismissal in order to evaluate the possibility of any contamination of other jurors. The motion was denied; the juror remained on the panel for the rest of the day; the juror was apparently excused before the trial resumed the following day; and the trial proceeded to its conclusion.

The Court of Appeals held that the defendants and their counsel had a constitutional right to be present at the inquiry and that the denial of that right to defendant Carter entitled him to a new trial without proof of actual injury or prejudice. The Court relied on *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955) and *People v Nickopou-*

*los,* 40 Mich App 146; 198 NW2d 691 (1972) as authority for its decision. See also *People v Palmer,* 28 Mich App 624; 185 NW2d 94 (1970).

The Court of Appeals also held that defendants Fountain and Anderson should be given a new trial to avoid a possible miscarriage of justice despite their counsel's acceptance of the procedure followed by the trial judge in excusing the juror.

The people maintain that the judge's action was authorized by MCLA 768.18; MSA 28.1041 which read as follows:

"Any judge of a court of record in this state about to try a criminal case which is likely to be protracted, may order a jury empaneled of not to exceed 14 members, who shall have the same qualifications and shall be empaneled in the same manner as is, or may be, provided by law for empaneling juries in such courts. All of said jurors shall sit and hear said cause. Should any condition arise during the trial of said cause which in the opinion of the trial court justifies the excusal of any of the jurors so empaneled from further service, he may do so and said trial shall proceed, unless the number of said jurors be reduced to less than 12, and in the event that there shall be more than 12 jurors left on said jury after the charge of the court, the clerk of the court in the presence of said court shall place the names of all of the said jurors on slips, folded so as to conceal the names thereon, in a suitable box provided for that purpose, and shall draw therefrom the names of a sufficient number to reduce the jury to 12 members who shall then proceed to determine the issue presented in the manner provided by law."

They say that *Medcoff, supra, Nickopoulos, supra* and *Palmer, supra* are all distinguishable and that *People v Van Camp,* 356 Mich 593; 97 NW2d 726 (1959), which interprets that statute, controls.

In *Medcoff, Nickopoulos* and *Palmer,* one or more of the jurors questioned in the absence of the

defendant and his counsel participated in the verdict in each case. In the case at bar the questioned juror did not. Accordingly we agree that these cases do not control decision here.

In *Van Camp, supra,* where 14 jurors were empaneled the judge observed the demeanor of 1 juror which prompted him to investigate her background and discover that the juror had not answered properly on voir dire and that her son was an habitual criminal who had been sentenced by that court. After charging the jury the judge announced that the juror was excused. Over objection to this action the conviction was affirmed.

This Court held that the judge had not acted arbitrarily in face of the reasons he stated. In the instant case, we too are satisfied that the judge's reason was valid and that there was no abuse of discretion. The judge excused the juror pursuant to MCLA 768.18; MSA 28.1041, for a reason which would support an excusal on motion. She quite properly saw to it that a record was available for post conviction consideration and her refusal to divulge her reason to counsel does not require reversal in the circumstances of this case.

We agree with the people that the Court of Appeals erred on this point.

Our decision on this point, however, while it makes the people's other objections moot, does not permit us to affirm the convictions of the defendants.

One of the issues raised in the Court of Appeals was the defendant's claim that the court should have instructed the jury on manslaughter and assault with intent to do great bodily harm less than murder.

The Court said:

"Two other issues raised on appeal will be discussed
in order to decrease the likelihood of error during
retrial. The defendants claim that the court should
have instructed the jury on manslaughter and assault
with intent to do great bodily harm less than murder.
The trial court limited the possible verdicts to murder
in the second degree and not guilty. The record does not
contain defense counsel's written requests for instruc-
tions. See *People v Wynn,* 386 Mich 627 [194 NW2d
354] (1972). We do find, however, that the testimony
presented at the trial would have supported instruc-
tions on lesser included offenses if requested."

GCR 1963, 516.1 provides that a judge *may*
direct the parties to file written requests for in-
structions at any time. It also provides that the
parties *may* file such requests on their own initia-
tive at or before the close of proofs.

GCR 1963, 516.2 provides that no party may
assign as error the giving or failure to give an
instruction unless he objects thereto *before the
jury retires* to consider the verdict, stating specifi-
cally the matter to which he objects and the
grounds of objection.

The extent of the court's obligation to charge in
the absence of a request to charge or objection to
the charge as given and the question whether the
court may properly refuse to grant a request first
voiced by objection to the court's instruction as
given depends on the reviewing court's appraisal
of the importance of the instruction not given.

In this case the instructions on manslaughter
and assault with intent to do great bodily harm
less than murder were requested before the judge
instructed the jury. The law is well established
that where a request to charge has been made, the
duty of the trial court is determined by the evi-
dence. If the record contains evidence which would
support a conviction of a lesser included offense, it

is reversible error to deny the request to charge on such included offense. *People v Jones,* 273 Mich 430; 263 NW 417 (1935).

See also *People v Stevens,* 9 Mich App 531; 157 NW2d 495 (1968); 8 Michigan Law & Practice, Criminal Law, § 402 (1973 Supp p 221); 23A CJS, Criminal Law, § 1337, p 923.

Here the Court of Appeals correctly noted that the trial court limited the possible verdict to murder in the second degree or not guilty. This was the error described in *People v Jones, supra.*

The court instructed the jury that they could find all or any of the defendants guilty of murder in the second degree or not guilty. She persisted in her refusal to give the requested instruction on manslaughter and the requested instruction on assault with intent to do great bodily harm less than murder, explaining her refusal by her analysis of the evidence. This was error for the evidence would have supported a verdict on either of these crimes.

The order of the Court of Appeals reversing the convictions of all three defendants is affirmed.

T. M. KAVANAGH, C. J., and SWAINSON, WILLIAMS, and LEVIN, JJ., concurred with T. G. KAVANAGH, J.

M. S. COLEMAN, J. *(concurring in part; dissenting in part).* I agree with Justice T. G. KAVANAGH that the Court of Appeals erred in its conclusion regarding the excused juror.

The issue relative to jury instructions on manslaughter and assault with intent to do great bodily harm less than murder was neither briefed nor argued before this Court by either party. We have held it to be outside our role to consider an

issue not properly before the Court. *Sinnott v Noble,* 390 Mich 91; 211 NW2d 842 (1973).

I would reverse the Court of Appeals and affirm the convictions.

J. W. FITZGERALD, J., did not sit in this case.