PEOPLE v SMITH

Docket No. 43594. Submitted December 12, 1979, at Detroit.—Decided
    June 3, 1980.

Kenneth Smith was convicted of receiving or aiding in the
concealment of stolen property over the value of $100, Record-
er's Court of Detroit, Joseph A. Gillis, J. Defendant appeals,
alleging that evidence of a prior similar offense was improperly
admitted, that the prosecution was erroneously allowed to
inquire of defendant's character witness whether the witness
had knowledge of the defendant's prior crimes, and that the
trial court erred by refusing to read the defendant's theory of
the case to the jury. *Held:*

1. The evidence of the prior similar offense was properly
admitted to refute the defendant's claim of mistake.

2. By calling a character witness the defendant put his
character in issue. Asking the witness whether he had heard of
previous acts of the defendant which were incompatible with
the character trait for which the witness was vouching was
proper cross-examination.

3. The instructions given by the trial court fully covered the
defendant's theory. A trial court is not required to instruct the
jury in the exact language submitted by the parties.

4. The defendant's sentence violated the rule that a mini-
mum sentence may not be longer than two-thirds of the maxi-
mum. Accordingly, the minimum sentence is modified to con-
form to the rule.

Affirmed, and sentence modified.

1. Criminal Law — Evidence — Similar Acts — Absence of
    Mistake — Rules of Evidence.
    Inquiry at trial into a defendant's prior conviction of an offense

References for Points in Headnotes

[1] 29 Am Jur 2d, Evidence §§ 323, 324.
[2] 81 Am Jur 2d, Witnesses §§ 500-504.
[3] 75 Am Jur 2d, Trial § 608.

similar to that for which he is on trial is permissible to show the absence of mistake on the part of the defendant (MRE 404[b]).

2. Witnesses — Criminal Law — Character Witnesses — Rules of Evidence.

A character witness may properly be asked on cross-examination whether he has heard of previous acts of misconduct by the defendant that are incompatible with the character trait for which he is vouching; by calling a character witness, a defendant makes his character an issue (MRE 405, 608).

3. Criminal Law — Trial — Theories of Parties — Instruction to Jury — Court Rules.

A trial court must instruct the jury on the issues in the case and the theories of the parties; each party is to submit a statement of issues and its theory at the close of the evidence, but the trial court need not use the language submitted by the parties if the court's instructions cover the material substance of the issues and theories (GCR 1963, 516.7).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Timothy L. Cronin,* Assistant Prosecuting Attorney, for the people.

*Bernstein, Rabinovitz & Weitzman, P.C.,* for defendant on appeal.

Before: M. J. Kelly, P.J., and M. F. Cavanagh and P. C. Elliott,* JJ.

P. C. Elliott, J. Defendant was charged with (Count 1) breaking and entering a railroad boxcar, MCL 750.110; MSA 28.305, and (Count 2) receiving or aiding in the concealment of stolen property of value over $100, MCL 750.535; MSA 28.803. The

* Circuit judge, sitting on the Court of Appeals by assignment.

jury found him guilty of the second count[1] and he was sentenced to prison.

Because of a series of thefts, railroad detectives were watching from an empty boxcar when, between 3 and 4 a.m., they observed two men walking toward boxcars loaded with new tires. After hearing a boxcar seal broken and the door opened, the detectives followed the men as they walked and jogged away, each carrying two tires under each arm. They saw the men place the eight tires in bushes near a street and disappear in different directions. Two minutes later, defendant, wearing clothing like that seen on one of the thieves, drove his car to the tires and placed three of them in his trunk.

Defendant testified that he was driving from Ann Arbor to Detroit to visit a girlfriend and happened to see tires near the railroad tracks beside the road. He said he parked and watched the tires for half an hour, and, when no one came up to them, he backed up to them, placed two tires in his trunk and ran, due to fright, when the detectives approached.

The judge, exercising his discretion, denied a defense motion to suppress defendant's admittedly[2]

---

[1] The jury was not instructed that it could not convict defendant on Count II unless they were satisfied that he did not steal or assist in the stealing of the property received or concealed. See *People v Kyllonen,* 402 Mich 135; 262 NW2d 2 (1978). Rather, the jury was instructed to choose between possible verdicts of not guilty or guilty of one or the other, but not both, counts. Defendant benefited by conviction of the lesser crime.

[2] The sentence transcript contains the following remarks of defense counsel: "We go through his back record, and we know he's used a number of different names, and we know he's had a bad record, no question about it * * *". It is difficult to ascertain his conviction record precisely from the transcripts and court file, but, apparently, he has been convicted three times of simple larceny and three times of receiving or aiding in the concealment of stolen property and once of attempted grand larceny and once of attempted receiving or concealing stolen property worth more than $100 and once for loiter-

bad record under MRE 609. On direct examination defendant answered "Yes" to his lawyer's question: "Mr. Smith, have you ever been convicted of a felony?" Because the prosecutor did not cross-examine defendant about his record we need not consider the MRE 609(a) ruling.

Instead, the prosecutor brought out that the defendant had been arrested on another, earlier occasion for breaking into a railroad boxcar and stealing tires which resulted in a conviction. The court permitted this inquiry under MRE 404(b). That ruling was proper. The prior similar act of theft of tires from a boxcar made improbable defendant's claims of mistake. Essentially his story was that he mistakenly thought the eight new tires had been discarded and that the detectives were wrong when they identified him as one of the men seen carrying away the tires from the opened boxcar.[3] Moreover, the jury learned of that earlier similar crime later, during cross-examination of a character witness called by defendant.

The character witness testified that he knew defendant's reputation for truth and veracity to be good. Before cross-examination of this witness, the prosecutor obtained the court's permission to inquire into the witness's knowledge of defendant's prior crimes that had resulted in convictions. The

ing on railroad property and once for possession of narcotics paraphernalia. At the time of the last mentioned conviction, at least, he used a false name. One of the simple larceny convictions resulted from plea-bargaining after arrest for breaking into a railroad boxcar and stealing tires.

[3] *People v Major*, 407 Mich 394, 398; 285 NW2d 660, 663 (1979), said:

"The legitimacy of similar acts evidence generally is its tendency either to identify the defendant as the unknown actor in an alleged criminal act or to negate the suggestion, normally advanced by the defendant, that the act in question, although performed by him, was not criminal because it was unintended, accidental, a mistake or otherwise innocent."

previous crimes involved theft or use of a false name. Crimes of theft, dishonesty or false statement especially discredit the offender's veracity.[4] Conversely, when a person is accused of a crime involving theft, evidence that he has a reputation for truthfulness connotes a basic honesty that is inconsistent with the crime charged. The purpose of the character evidence is to persuade the jury of the truthfulness of defendant's denial of theft or knowledge of theft by others. Asking a character witness whether he has heard of previous acts of misconduct that are incompatible with the character trait for which he is vouching is proper cross-examination. MRE 405 and MRE 608. By calling the character witness, the defendant has made his character an issue. See *People v Fields,* 93 Mich App 702; 287 NW2d 325 (1979). In *Michelson v United States,* 335 US 469, 479; 69 S Ct 213, 220; 93 L Ed 168, 175 (1948), Justice Jackson, for the majority, stated:

"The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him."

See also *People v Dorrikas,* 354 Mich 303; 92 NW2d 305 (1958).

In this case, the character witness was asked whether he had heard of the prior conduct result-

---

[4] In *Gordon v United States,* 127 US App DC 343, 347; 383 F2d 936, 940 (1967), Judge, now Chief Justice, Burger said:

"In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity."[9]

"[9] 'The reason for exposing the defendant's prior record is to attack his *character,* to call into question his reliability for truth-telling * * *.' " (Citation omitted.)

ing in criminal convictions. The questions were not groundless innuendo, nor was the prior conduct remote. The inquiry was relevant to the issue being tried. The court's jury instructions included CJI 5:2:05, 06 and 08 which adequately covered the subject. These instructions would be misleading if a character witness for a defendant could not be challenged by asking him whether he knew of a long history of thievery, dishonesty and other misconduct pertinent to the reputation to which he attests.[5]

Proof of defendant's past thefts, including stealing other tires from a boxcar, was not admissible to prove propensity, but surely the jury was entitled to know the truth about a defendant who testified, contradicted eyewitnesses, claimed mistake and put his character on the line by calling a character witness.

Finally, we find no merit in the other claims of error presented. The instructions fully covered defendant's theory although the judge refused to read the handwritten "theory" given to the court after the judge had completed his instructions. See the footnote to *People v Van Wyck,* 72 Mich App 101, 104; 249 NW2d 311, 313 (1976), and see also *People v Fountain,* 392 Mich 395, 401; 221 NW2d 375, 378 (1974). GCR 1963, 516.7 mandates that the court instruct on the issues and theories of the parties (the court did this), that each party must submit his statement of issues and theory at the close of the evidence (defense counsel did not do so), and that the court need not use the submitted language if the instructions cover the material substance of the issues and theories (which occurred).

---

[5] "Otherwise a defendant, secure from refutation, would have too clear a license unscrupulously to impose a false character upon the tribunal." 1 Wigmore on Evidence (3d ed), § 58, p 458.

Defendant was sentenced to a term of 3-1/2 to 5 years. It is the law of this state that the minimum term could not be more than 3-1/3 years, two months less than the minimum term imposed. *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972), and *Brinson v Genesee Circuit Judge,* 403 Mich 676; 272 NW2d 513 (1978). Although the error was not raised on appeal, we reduce his minimum sentence to 40 months. GCR 1963, 820.1(7).

Affirmed as modified.