*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ARTHUR JOHN LAUNDRY JR,

Defendant-Appellant.

UNPUBLISHED
June 12, 2025
11:59 AM

No. 363910
Chippewa Circuit Court
LC No. 2021-005370-FH

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

Defendant, Arthur John Laundry, Jr., was on parole for a sexual assault of an adult with an intellectual disability when he sexually assaulted the same person. A jury found him guilty of one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (sexual penetration of mentally incapable victim), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(c) (sexual contact with mentally incapable victim). The trial court sentenced Laundry to 217 months' to 30 years' imprisonment for CSC-III and to 34 months' to 4 years' imprisonment for CSC-IV, with no credit for time served and consecutive to the sentence for which he was on parole. On appeal, Laundry raises several evidentiary and sentencing issues. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In 2004, Laundry sexually assaulted one of his relatives after she had fallen asleep on his couch, unconscious and intoxicated because he gave her alcohol. The relative reported the assault to the police soon after it occurred, and Laundry pleaded guilty to assault with the intent to penetrate. He was sentenced to 18 months' to 10 years' imprisonment and discharged in April 2011. In 2012, Laundry sexually assaulted another person (who is the same victim in the present case) and her mother, and was charged with two counts of CSC-III. The victim and her mother were adults with intellectual disabilities, varying in degree. The victim mentally functioned at

-1-

different levels, ranging from the level of a two-year-old to the level of a nine-year-old.[1]  Laundry pleaded guilty to sexually assaulting the mother in exchange for the prosecution dropping the charge regarding the victim, and he was sentenced to 7 to 15 years' imprisonment.

Laundry was released on parole and given the instruction that he could not have any contact with the mother or the victim.  Nevertheless, after his GPS tether was removed in January 2021, Laundry contacted a mutual friend who he knew had contact with the victim.  At the time, the victim was living at the mutual friend's apartment while the victim's guardian was unavailable.  Knowing the extent of her intellectual disabilities and that he was not allowed to contact her, Laundry invited the victim to come to his apartment on at least one occasion.  The victim testified that Laundry "touched" her while she was laying on her back on the couch.  The victim said she did not like being touched.  The victim explained that Laundry touched her "[r]ight here and then inside," which she clarified was her "[p]rivate," while her clothes were off and Laundry was wearing only his underwear.  She reluctantly[2] explained that Laundry touched her with "[h]is private thing," for which she did not have a word, and that "it hurt."  The victim pointed to where Laundry touched her, but where she pointed was not stated on the record.  The victim testified that her "private" is underneath her shirt and jeans.

The victim's guardian contacted law enforcement when she heard the victim was seen with Laundry.  Law enforcement interviewed Laundry and initially, he admitted to only having contact with the victim, but eventually, he admitted the victim was in his apartment and her clothes were off.  In Laundry's version of events, however, the victim was sexually aggressive toward him and he was adamant that did not actually have sexual contact with her.  He later admitted to law enforcement that he had a sexual relationship with the victim years ago and had been attracted to her then, referring to the 2012 incident.

Laundry was charged with CSC-III and CSC-IV, and proceeded to trial in August 2022.  During the afternoon session of the first day of trial, the victim's guardian informed the court that she was transferring her guardianship over the victim to another individual.  The trial court did not take any more recesses that day until it dismissed the jury for the evening.  That evening, one of the jurors informed the court's bailiff that she was uncomfortable continuing to serve on the jury because she knew the new guardian.  The juror was dismissed from the case without objection from Laundry on the second morning of trial.

After providing adequate notice under MCL 768.27b(2), the prosecutor then introduced Laundry's 2004 and 2012 criminal sexual conduct as other-acts evidence, and the prosecutor

---

[1] The victim's guardian testified that the victim could decide what to eat and when to go to the bathroom, and could tell time and use a phone, but could not drive or make important financial decisions, and was not able to determine what might be a dangerous situation, such as getting into a stranger's vehicle.  The guardian also testified the victim would go along with any question that suggested an answer.  For example, if the victim was asked "Isn't it true that the sky was purple today when you got out of bed?", the victim would "go along with it" and say "yes, it is."

[2] When asked what part of Laundry was touching her, the victim responded "I don't want to say that."

explained that Laundry had sexually assaulted vulnerable women in the past. In addition to the other acts evidence, the prosecutor called several witnesses that testified they saw the victim at Laundry's apartment. This included testimony from the mutual friend, Laundry's landlord, and a maintenance worker who entered Laundry's apartment to complete some repairs. Further, the victim testified regarding her account of what happened in Laundry's apartment.

The jury found Laundry guilty of CSC-III and CSC-IV. At sentencing, the trial court scored offense variable (OV) 8 at 15 points and OV 10 at 15 points, along with scoring other offense variable and prior record variables. Laundry did not object to the scoring of the OVs at that time. The trial court calculated that Laundry's minimum sentencing guidelines range for his conviction of CSC-III was 87 to 217 months' imprisonment. The trial court sentenced Laundry as a third-offense habitual offender,[3] to 217 months' to 30 years' imprisonment for CSC-III and to 34 months' to 4 years' imprisonment for CSC-IV.

Laundry appealed his convictions, as well as his sentences, to this Court with an argument that his trial counsel was ineffective. This Court remanded the matter to the trial court for a *Ginther*[4] hearing and retained jurisdiction. *People v Laundry*, unpublished order of the Michigan Court of Appeals, entered July 31, 2023, (Docket No. 363910). At the *Ginther* hearing, Laundry's trial counsel testified that he could have objected to the admission of the evidence from the 2004 incident, but he declined to do so for two reasons. First, he did not believe that he would win any such motion, and, second, he planned to use the evidence to show that the prosecution was "piling on" and trying to portray Laundry as a bad person rather than actually proving their case. The trial court opined that trial counsel had a trial strategy for not objecting to the other-acts evidence and that that strategy had successfully portrayed the prosecution as vindictive. The trial court found that Laundry's trial counsel was not ineffective. After that remand, Laundry continues his appeal in this Court.

## II. OTHER-ACTS EVIDENCE

Laundry first challenges the admission of the other-acts evidence from 2004. Laundry did not preserve this issue by objecting to the admission of the evidence in the trial court,[5] *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), and, therefore, this unpreserved evidentiary issue is reviewed for plain error affecting substantial rights, *People v Lowrey*, 342 Mich App 99, 108; 993 NW2d 62 (2022). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A "clear or obvious" error is an error "that is not subject to reasonable dispute," and an error generally affects substantial rights if it "affected the outcome of the lower court proceedings." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

---

[3] MCL 769.11.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] This error was addressed in the trial court as an ineffective assistance of counsel issue, but that post-trial remand does not preserve the evidentiary issue in this matter for appeal.

The evidence regarding the 2004 sexual assault was admitted under MCL 768.27b, which is an exception to the usual prohibition against propensity evidence. "[I]n prosecutions for offenses involving domestic violence or sexual assault, MCL 768.27b permits evidence of a defendant's prior commission of domestic violence or sexual assault to show the defendant's character or propensity to commit such acts." *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 8. "[T]he prior act does not have to be identical to the charged offense to be relevant and possibly admissible under MCL 768.27b." *Id*. at ___; slip op at 9. Under MCL 768.27b(4), acts that occurred more than 10 years before the date of the charged acts are excluded unless at least one enumerated exception is satisfied. The exceptions are as follows:

> (a) The act was a sexual assault that was reported to law enforcement within 5 years of the date of the sexual assault.
>
> (b) The act was a sexual assault and a sexual assault evidence kit was collected.
>
> (c) The act was a sexual assault and the testing of evidence connected to the assault resulted in a DNA identification profile that is associated with the defendant
>
> (d) Admitting the evidence is in the interest of justice. [MCL 768.27b(4)(a)-(d).]

In this case, Laundry was charged with sexual assault and the 2004 other-acts evidence consisted of his commission of another sexual assault. Although the 2004 assault occurred more than 10 years before the charged acts in this case, the 2004 assault was reported to law enforcement within five years of its occurrence, satisfying the exception in MCL 768.27b(4)(a). It was therefore not subject to exclusion under MCL 768.27b(4). *Berklund*, ___ Mich App at ___ n 2; slip op at 4 n 2.

Such evidence may also be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice," but "when applying MRE 403 to evidence admissible under MCL 768.27b, courts should weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Berklund*, ___ Mich App at ___; slip op at 9-10. Laundry argues that the 2004 assault was distinguishable from the assault in this case because Laundry's relative in the 2004 assault was not mentally incapacitated or intoxicated and, therefore, the 2004 assault had no probative effect because it did not show a common theme.

Laundry ignores, however, that the other acts need not be identical. *Id*. at ___; slip op at 9. Laundry's relative was asleep when he assaulted her, so she was still "physically helpless" as defined by MCL 750.520a(m).[6] The Legislature has treated physical helplessness and mental incapacity similarly in MCL 750.520d(1)(c) and MCL 750.520e(1)(c). The 2004 assault was a similar act of exploitation against a vulnerable victim, and it demonstrated Laundry's pattern of sexually assaulting victims who were not capable of consenting or resisting. Laundry argues that his incarceration after the 2004 assault should demonstrate probable rehabilitation, but his actual

---

[6] " 'Physically helpless' means that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m).

history shows the opposite—in 2012, he pleaded guilty to CSC-III. Therefore, the probative value of the relative's testimony regarding the 2004 assault weighs in favor of admission, and the other-acts evidence from 2004 was properly admitted. We find no plain error.

## III. MISTRIAL

At the beginning of the second day of trial, the trial court dismissed a juror who realized in the afternoon on the first day of trial that she knew the victim's new guardian. Laundry did not request a mistrial, so his argument that a mistrial should have been granted is unpreserved. *People v Nash*, 244 Mich App 93, 96-97; 625 NW2d 87 (2000). Laundry did not ask the trial court to question the remaining jurors after dismissal of the juror, and, therefore, his argument regarding jury contamination is unpreserved. *People v Jackson*, 292 Mich App 583, 592; 808 NW2d 541 (2011). Laundry's arguments regarding the propriety of granting a mistrial and regarding improper extrinsic influence on the jury are reviewed for plain error affecting substantial rights. *Nash*, 244 Mich App at 96-97; *Jackson*, 292 Mich App at 592. "Generally, the party who is the proponent of a given position bears the burden of establishing the facts to support that position." *In re Portus*, 325 Mich App 374, 393; 926 NW2d 33 (2018).

Although "[t]he trial court must take appropriate steps to ensure that jurors will not be exposed to information or influences that could affect their ability to render an impartial verdict based on the evidence admitted in court," a defendant is not entitled to a new trial merely because "a juror has been placed in a potentially compromising situation." *Jackson*, 292 Mich App at 592-593 (quotation marks and citation omitted). To obtain a new trial because the jury considered extraneous evidence, "defendant must prove that the jury was exposed to extraneous influences" and that the "extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *People v Budzyn*, 456 Mich 77, 88-89; 566 NW2d 229 (1997). A mistrial may only be granted if the requesting party establishes "that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021) (quotation marks and citation omitted).

A trial court should not declare a mistrial on the basis of a possible extraneous influence on a juror without determining that a mistrial is manifestly necessary. *People v Beck*, 510 Mich 1, 8-9, 11-16; 987 NW2d 1 (2022). Dismissing a spare juror under MCL 768.18 and proceeding with only 12 jurors may be a reasonable alternative to declaring a mistrial. *People v Caddell*, 332 Mich App 27, 40-41; 955 NW2d 488 (2020); accord *People v Fountain*, 392 Mich 395, 397-400; 221 NW2d 375 (1974). Indeed, MCL 768.18 "is intended to avoid mistrials in cases where 1 or more of the original jurors is necessarily discharged during the course of the trial by reason of personal disability or legal disqualification." *People v Van Camp*, 356 Mich 593, 605-606; 97 NW2d 726 (1959).

In this case, the juror informed the bailiff that she knew the victim's new guardian and she was uncomfortable continuing to serve on the jury. At the beginning of the second day of trial, the parties discussed the juror's discomfort, and they agreed to let the trial court dismiss her and proceed without an extra juror. Laundry admits that he has no information about whether the juror who knew the victim's new guardian discussed their knowledge with the other jurors. Therefore, Laundry cannot demonstrate that the jury was exposed to an extraneous influence. *Portus*, 325 Mich App at 393; *Budzyn*, 456 Mich at 88-89. Further, the trial court instructed the jury not to

discuss the evidence until it was officially deliberating. Although the trial court did not issue a reminder instruction before dismissing the jury for the first evening, jurors are presumed to follow the trial court's instructions, *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020), and Laundry fails to identify any reason why the juror in question, or any of the other jurors, failed to follow the trial court's instruction. Even if this issue had been preserved, Laundry proffers nothing to suggest that a mistrial was manifestly necessary. *Portus*, 325 Mich App at 393.

## IV. GREAT WEIGHT AND SUFFICIENCY OF THE EVIDENCE

Next, Laundry argues that the victim's testimony contained some confusion and inconsistency, which demonstrated that his conviction was against the great weight of the evidence. The prosecution treats this claim also as a challenge to the sufficiency of the evidence. A defendant is not required to preserve a challenge to the sufficiency of the evidence, and Laundry preserved a challenge based on the great weight of the evidence by moving for a new trial. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011).

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Knepper*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363191); slip op at 5 (quotation marks and citation omitted). Overturning a jury's verdict is one of the highest hurdles in the law, and doing so is permitted only when the evidence does not reasonably support the verdict and the verdict "was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. at ___; slip op at 5-6 (quotation marks and citation omitted). A new trial may not be granted on the basis of conflicting testimony or doubts about a witness's credibility unless the testimony is physically impossible, so "patently incredible" or "inherently implausible" that no reasonable juror could believe it, or "has been seriously impeached and the case marked by uncertainties and discrepancies." *Id*. at ___; slip op at 6.

Laundry articulates a number of supposed inconsistencies or implausibilities in the victim's testimony. He does not contend that the victim's testimony is physically impossible, but rather that it points to the possibility that she was testifying about the 2012 incident instead of the current allegations. Although a victim's testimony need not be corroborated in CSC prosecutions, MCL 750.520h, the victim's presence in Laundry's apartment was corroborated in several ways: (1) a maintenance worker, Laundry's landlord, and the mutual friend saw the victim in Laundry's apartment in 2021; (2) the victim was able to correctly describe and identify Laundry's apartment; and (3) the detective in this case testified that aside from Laundry denying any sexual contact with the victim, his statements otherwise lined up with the victim's statements about their whereabouts around the time of the sexual assault. And, as discussed above, Laundry's prior bad acts were probative of his pattern of sexual abuse of this particular victim in this case.

Laundry also argues that the victim's testimony regarding him not "getting off of her" indicated that "nothing happened." Laundry's argument is again misplaced, because he ignores that the victim also testified that she did not want to state what Laundry did while she was trying to push him off, and when pressed, she explained that he was touching, and at one point was "inside" her "private" with "[h]is private thing."

-6-

In this case, the victim's testimony was not impossible, incredible, or seriously impeached, and the *only* important factual dispute was whether Laundry actually had sexual contact with or penetrated the victim. *Id*. at ___; slip op at 6. Given the victim's testimony, Laundry's convictions were not against the great weight of the evidence.

Because the prosecution treats this as a challenge to the sufficiency of the evidence, we also briefly address sufficiency. In evaluating such a challenge, we review "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Prude*, 513 Mich 377, 385; 15 NW3d 249 (2024) (quotation marks, brackets, and citation omitted). We are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

"MCL 750.520d(1)(c) states that a person is guilty of CSC-III if they engage in sexual penetration with someone the defendant knows or has reason to know is 'mentally incapable, mentally incapacitated, or physically helpless.' " *People v Craig*, 342 Mich App 217, 231; 994 NW2d 792 (2022). MCL 750.520e(1)(c) similarly states that a person is guilty of CSC-IV if they engage in sexual contact with someone the defendant knows or had reason to know "is mentally incapable, mentally incapacitated, or physically helpless." Mental incapacity "means that a person suffers from a mental disease or defect that renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." MCL 750.520a(j). To hold the evidence was sufficient for the jury to find Laundry guilty of both CSC-III and CSC-IV, we must determine whether a rational trier of fact could find penetration occurred and that Laundry knew the victim was mentally incapacitated.

"Any penetration, no matter how slight, is sufficient to satisfy the penetration element of [CSC-III.]" *People v Hunt*, 442 Mich 359, 364; 501 NW2d 359. "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body[.]" MCL 750.520a(r). In this case, the victim testified as follows:

> *Q*. What part of him was touching you, when you were trying to push him off?
>
> * * *
>
> *A*. I don't want to say that.
>
> *Q*. I know you don't want to say it, but I really need you to say it.
>
> *A*. Here.
>
> *Q*. Sorry?
>
> *A*. Right *in here*.
>
> *Q*. Okay, what—what part of him was touching you right *in there*?

*A.* His private thing.

*Q.* His private?

*A.* Yes.

*Q.* Do you have a word for that?

*A.* No.

*Q.* Okay. What did that feel like to you?

*A.* It hurts.

*Q.* Okay. Let's talk about, just briefly, that private that you just referred to. Do you do anything with that part of your body?

*A.* No.

*Q.* What part—what clothing covers that part of your body?

* * *

*A.* A shirt. . . . And jeans.

* * *

*Q.* And when you say that there was a part of him in your private and that it hurt, can you tell me what private that is? Do you have a name for that?

*A.* No.

*Q.* Can you point to it?

*A.* Yes.

*Q.* Okay. Take your finger, up high, and point to it, please. Point—no?

*A.* Nope.

It is clear from the transcript that the victim's mental incapacity made it difficult for the prosecutor to create a clear record of where the victim was pointing when referring to "in here." And while the prosecutor attempted more than once to get the victim to articulate that "in here" referred to her genital opening, the jury was present and able to evaluate the victim's credibility and see where, if at all, the victim was pointing. The jury heard both that Laundry used his "private thing" to touch the victim "in here," and that "it hurt." Viewing this record in the light most favorable to the prosecution, a reasonable juror could interpret this exchange to establish that penis-vagina penetration occurred.

Finally, Laundry had previously been charged with sexually assaulting the victim in 2012, and he admitted to the detective in this case that he had a sexual relationship with the victim in 2012. Because the victim's mental limitations were obvious to other witnesses in this trial and could be observed directly by the jury, and because Laundry had prior knowledge of and interactions with the victim, a reasonable trier of fact could find that Laundry knew or had reason to know that the victim was mentally incapacitated. We hold the evidence was sufficient to support the jury's verdict.

## V. SENTENCING GUIDELINES

Laundry argues next that the trial court erred in scoring OV 8 and OV 10. Laundry preserved this issue by moving to remand for resentencing in this Court.[7] We review "for clear error a trial court's findings in support of a particular score under the sentencing guidelines" but review "de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

### A. OV 8

"OV 8 states that 15 points are to be assessed when 'a victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense.' " *People v Barrera*, 500 Mich 14, 15-16; 892 NW2d 789 (2017), quoting MCL 777.38(1)(a) (brackets omitted). "Asportation does not require force" and "may occur even when the victim voluntarily accompanied the defendant to a place or situation of greater danger." *People v Dillard*, 303 Mich App 327, 379; 845 NW2d 518 (2013), abrogated on other grounds in *Barrera*, 500 Mich at 16-17. The asportation may include movement incidental to the commission of the crime. *Barrera*, 500 Mich at 17. "A place of greater danger includes an isolated location where criminal activities might avoid detection." *Dillard*, 303 Mich App at 379.

Laundry argues on appeal that he did not move the victim anywhere and that the victim simply "showed up at his apartment." Laundry ignores that the victim testified that he made her go to his apartment. Further, even if the victim merely showed up at Laundry's apartment, the victim's guardian testified that the victim would readily get into cars with strangers and be easily led to unsafe environments because of her intellectual disability. Instead, given that the mutual friend testified that Laundry invited both her and the victim over at least three times, the evidence demonstrates that Laundry induced the victim to go to his apartment and did not need to use any force to do so. Laundry's apartment was also a more isolated place where he might avoid detection. Therefore, the trial court properly scored OV 8 at 15 points.

---

[7] "To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018).

## B. OV 10

For OV 10, the sentencing court must assess "15 points if the offense involved 'predatory conduct.' " *Haynes*, 338 Mich App at 437, quoting MCL 777.40(3)(a) (brackets omitted). The statute defines "predatory conduct" to mean "preoffense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a). To find predatory conduct occurred to score 15 points for OV 10, the trial court must answer the following three questions affirmatively:

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was the victimization the offender's primary purpose for engaging in the preoffense conduct? [*People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008).]

For purposes of OV 10, "predatory conduct" is limited to "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (quotation marks and citation omitted).

Multiple witnesses testified about the victim's intellectual disability and the trial court found the same made her vulnerable. And, in fact, Laundry does not argue otherwise. Rather, he argues that there was no evidence that he engaged in any preoffense conduct, and, if he did, any alleged conduct did not rise beyond mere run-of-the-mill planning. However, Laundry admitted that, even though he knew he was not supposed to have contact with the victim, he spent time with her on multiple occasions. And the mutual friend testified that Laundry initially interacted with the victim as friends, but that interaction developed into the victim going to Laundry's apartment with him and Laundry persistently wanting intercourse with the victim. The victim testified she had known Laundry "for a long time," and saw him a "couple times" at his apartment, where she would sit on the couch and watch television. While on the couch, the victim testified Laundry would "touch me." Laundry took her clothes off and "tried to get on [her]" more than once, and made her stay the night at his apartment. In between assaulting the victim, Laundry would take her to Walmart, McDonalds, and Goodwill, and the two would go back to his apartment where he would assault the victim again. Eventually, this escalated to at least one instance of CSC-III. The escalation of Laundry's conduct is the type of preoffense conduct that is appropriately scored under OV 10.

Therefore, the trial court did not err when it assessed 15 points for OV 10 because the evidence demonstrated that Laundry's preoffense conduct of repeatedly pursuing the victim to spend time with him, and inducing a vulnerable victim to go to his apartment and ultimately touching her multiple times until Laundry committed CSC-III, was predatory conduct.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Laundry argues that his trial counsel was ineffective for not objecting to the introduction of his 2004 conviction, not moving for a mistrial because of the presence of the juror that was later disqualified, and not objecting to the scoring of his OVs. Laundry "preserved his ineffective-assistance-of-counsel claim by moving in this Court to remand for a *Ginther* hearing." *People v Hines*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 363151); slip op at 5 (footnote omitted). "Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). A trial court's findings of fact are reviewed for clear error and questions of law are reviewed de novo. *Id.* "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 14. Trial strategy is presumed to be sound, and it is not ineffective merely because it does not succeed or involves taking calculated risks in the face of limited options. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020).

As discussed, the 2004 other-acts evidence was properly admitted, no mistrial would have been proper and Laundry has no grounds for suggesting that the jury was contaminated, and the trial court correctly scored OV 8 and OV 10. Therefore, any objection would have been futile and counsel cannot have been ineffective for failing to raise a futile argument. *Serges*, ___ Mich App at ___; slip op at 14. Further, regarding the 2004 other-acts evidence, trial counsel stated during the *Ginther* hearing that the strategic reason for not objecting was to show that the prosecutor was only trying to prove their case by portraying Laundry as a bad person rather than by offering evidence of his actual guilt. The trial court correctly denied a new trial based on ineffective assistance because Laundry has not overcome the presumption that counsel's strategy, although unsuccessful, was sound. *White*, 331 Mich App at 149.

## VII. SENTENCE PROPORTIONALITY

Lastly, Laundry argues that the sentence he received for CSC-III was disproportionate to his conduct. All sentences are reviewed for proportionality, but sentences within the properly calculated sentencing guidelines minimum range are presumptively proportionate. *People v Posey*, 512 Mich 317, 349-359; 1 NW3d 101 (2023), 361 (CAVANAGH, J., concurring), 390-391, 411-414 (WELCH, J., concurring in result) (*Posey I*). On remand, this Court clarified that "the presumption of proportionality with respect to within-guidelines sentences . . . is now nonbinding on this Court under *Posey*, a presumption of reasonableness, i.e., proportionality, nevertheless continues to exist pursuant to *Posey*." *People v Posey (On Remand)*, ___ Mich App ___, ___ n 2; ___ NW3d ___ (2023) (Docket No. 345491); slip op at 2 n 2 (*Posey II*). This Court reviews a sentencing decision for an abuse of discretion, and a trial court abuses its discretion by imposing a sentence that "is not proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7. A sentencing court is required to articulate its reasoning for imposing a particular sentence, but if it imposes a sentence within the guidelines, it satisfies its obligation to articulate its reasoning by simply stating that it relied on the guidelines. *People v Broden*, 428 Mich 343, 350-351, 353-354; 408 NW2d 789 (1987). The articulation requirement is also satisfied if it is clear from context that the court relied on the sentencing guidelines. *People v Conley*, 270 Mich App 301, 312-313; 715 NW2d 377 (2006).

A sentence within the properly calculated guidelines range is presumptively proportionate, but that presumption may be overcome by evidence of unusual, meaning uncommon or rare, circumstances that render the sentence disproportionate. *Ventour*, ___ Mich App at ___; slip op at 7-8. In general, "[a]n appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense," but "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *People v Boykin*, 510 Mich 181, 183-184; 987 NW2d 58 (2022). All other things being equal, the more egregious the offense and the more recidivism apparent, the more severe a proportionate sentence should be. *Posey II*, ___ Mich App at ___; slip op at 3.

In this case, the trial court imposed a minimum sentence of 217 months for Laundry's CSC-III conviction and 34 months for his CSC-IV conviction, both of which were at the top of, but within, his guidelines minimum ranges. Specifically, the minimum sentencing guidelines range for his conviction of CSC-III was 87 to 217 months' imprisonment, and the minimum sentencing guidelines range for his conviction of CSC-IV was 7 to 34 months' imprisonment. Therefore, his sentences are presumptively proportionate. *Ventour*, ___ Mich App at ___; slip op at 7-8.

After hearing from the prosecutor, and from defense counsel who asked for a within-guidelines sentence but stated any sentence rendered was a death sentence considering Laundry's age at the time of sentencing,[8] the trial court stated it would follow the recommendation of the MDOC. It sentenced Laundry to 18 to 30 years' imprisonment for CSC-III, and 34 to 48 months' imprisonment for the CSC-IV conviction. The trial court stated only that the MDOC's recommendation was "justified" and "warranted."

Although the trial court's stated reasoning was minimal, it indicated that it was accepting the recommendation of the MDOC, implicitly relying on the sentencing guidelines and, therefore, excusing further articulation. *Broden*, 428 Mich at 350-351, 353-354 (holding that a sentencing judge's reference only to the sentencing guidelines when giving reasons for the sentence imposed is a sufficient explanation for the sentence when the guidelines' recommendation is followed). See also *People v Poppa*, 193 Mich App 184, 190; 483 NW2d 667 (1992) ("when a sentence imposed is within the range recommended by the sentencing guidelines, reference to the guidelines alone is a sufficient explanation.").

Further, Laundry does not offer this Court anything that would overcome the presumption of proportionality. Laundry committed the present offenses while on parole and offended a third time after being given lesser prison terms and increasingly emphatic warnings for his previous offenses. It was appropriate for the trial court to impose a more serious sanction on this occasion. And, again, despite this term being more extensive than those in the past, it is still a term that is subject to the presumption of proportionality. *Posey II*, ___ Mich App at ___; slip op at 3.

Laundry argues that the trial court failed to consider his various infirmities and his traumatic upbringing when sentencing him. But this Court has previously held that "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing," and Laundry

---

[8] Laundry was 63 years old at the time of sentencing. His date of birth is May 21, 1959.

does not challenge that holding. *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). And, as stated on the record, Laundry did not demonstrate any remorse at the sentencing hearing for the convictions in this case. Rather, he disagreed with the verdict and believed it was unfair. In short, Laundry has not overcome the presumption of proportionality for his within-guidelines sentence.

Affirmed.

/s/ Christopher P. Yates
/s/ Adrienne N. Young
/s/ Randy J. Wallace